Ruffin, C. J.
 

 The Court is of opinion, that the transcript from Iredell was proper evidence of the judgment on Underwood, as principal in the felony. It would have been right to set out in the record, as finally made up, the certificate from this Court as having been sent by the Clerk of this Court or brought in by the Solicitor. But to the purpose for which it was offered, we think the record sufficient, as it is. It is true, that, after an appeal to this Court, any subsequent proceedings in the Superior Court cannot be regarded by this Court, when the case is before us as between the parties directly affected by those proceedings, by the appeal of one of them. But as the subject matter in this case, namely ? a charge of murder against Underwood, was within the jurisdiction of the Superior Court, the ultimate judgment of that Court, not reversed nor vacated by appeal, it would seem, could not be impeached collaterally by another person, upon the ground that it did not appear that the cause, after the appeal from the first judgment, had not been remitted, and so was
 
 coram. non judice.
 
 But however that may be, the record here shews, informally it may be admitted, that the Court in passing sentence, professed to act in obedience to the dc-
 
 *239
 
 cisión of the Supreme Court on the appeal before taken
 
 by
 
 the prisoner, which the law,
 
 Rev. St. c.
 
 33,
 
 s.
 
 6, directs shall be certified to the Superior Court, and thereupon requires the Superior Court to proceed to judgment and sentence agreeably to the decision of the Supreme Court and the laws of the State. We cannot understand less from this, than that a decision of the Supreme Court had been certified to the Superior Court, which made it the duty of the latter Court to proceed in the case in some manner, though it does not directly appear in what particular manner. The cause cannot therefore be deemed to be
 
 coram non judice;
 
 but, at worst, it is- erroneous merely, to pass sentence of death without setting out at large the decision of the Supreme Court, as the authority for the judgment. If, however, it bo admitted to' be erroneous in that point, yet it will net avail this prisoner ; for it seems to have been long agreed, that the accessory cannot take advantage of error in the record against the principal, and that the attainder of the principal, while unreversed, is
 
 prima facie
 
 evidence against the accessary of the principal’s guilt. l
 
 Hale P. C.
 
 625, 2
 
 Hawk. c. 29, s.
 
 40.
 

 The other points of evidence were, in our opinion, - properly decided also. The evidence of the violence ©f the prisoner’s passions and language, would rather operate against. than for him, as shewing a malignity of heart. At best, it was irrelevant, and could profit the prisoner nothing.
 

 The threats of other persons against Peden, or admissions by them that they had killed him, were but hearsay j and, moreover, could not tend to establish, that Underwood and Duncan were not also guilty as charged.
 
 State
 
 v.
 
 May,
 
 4
 
 Dev.
 
 328. Of the same character are the suspicions entertained by some people, that other persons had committed or been concerned in the murder. Those matters were certainly consistent with the guilt of those parties, and could therefore serve no purpose but
 
 to.
 
 mislead the jury.
 

 
 *240
 
 There was then a motion in arrest of judgment. One ground was, that the transcript from Iredell (on which the trial was had in Davie,) did not shew the seal of the Court of Wilkes affixed to that part of it, which purported to set forth the transcript brought into the Court of Iredell from the Court of Wilkes. But it is manifest that the statement of the transcript from Wilkes, in the record of Iredell, as enrolled in Iredell, purports to be but a copy, 'and therefore could not have the impression of the seal of Wilkes. To the Judge of the Court in Iredell, it belonged to determine, as a matter of fact, whether the transcript purporting to come from Wilkes, was verified by the seal of that Court, and really came from it. Having been received as a transcript from Wilkes, and enrolled as such in making up the record in Iredell, it was conclusive in the Court of Davie, that the transcript,' which purported to come from the Court of Wilkes, actually came from it.
 

 Another ground is, that the indictment does not lay the offence
 
 vi et arviis.
 
 In point of fact, that part of the indictment, which charges the assault and killing by Underwood, lays them
 
 vi et armis;
 
 but in charging Duncan as accessary in the conclusion of the Court, it finds that he “ feloniously, wickedly, wilfully, and of his malice aforethought, did incite, move, procure, aid. counsel, hire and command the said James Underwood,” áte., omitting Si force and arms.” And this, we think, is sufficient, I® is agreeable to the nature of the offence charged on the-prisoner ; which is not a crime of which force is a constituent, but merely that of inducing another person to commit such a crime. However it might be at common law or in England, under the statute of Hen. 8, our Act,
 
 Rev. St. c.
 
 35,
 
 s.
 
 12, must be deemed to dispense with those terms. As was said in the
 
 State
 
 v.
 
 Moses,
 
 2
 
 Dev.
 
 452, the Legislature meant that it should be sufficient for the indictment directly to aver the facts and circumstances, which constitute the crime, and that is done here
 
 *241
 
 in the words, that the prisoner “feloniously procured, hired,’* &c. Underwood to kill and murder Peden. In the case just cited, it was considered, that
 
 vi et armis et baculis
 
 were but words of form, now rendered superfluous; and in reference to an indictment against an accessary they are plainly so, inasmuch as his offence tends only to a breach of the peace, and is not, of itself, an actual breach of it.
 
 Hawk. B.
 
 2, c. 25,
 
 s.
 
 90.
 
 Rex
 
 v.
 
 Busks,
 
 7
 
 T. R. 4.
 

 There is, therefore, no error in the record; and this must be certified accordingly.
 

 Pee Cueiaiw. Ordered to be certified accordingly.