STATE *v.* DANIEL YATES.

(Filed 17 May, 1911.)

1. Homicide—Manslaughter—Evidence Sufficient.

Evidence that deceased and prisoner got into a heated dispute over a boundary to their lands, both being armed and cursing each other, when the prisoner said to deceased that he would shoot him, upon which deceased turned and the prisoner fired in his face, causing death. *Held*, sufficient for judgment of manslaughter, upon the theory that both fought willingly, under the facts and circumstances of this case.

2. Homicide—Self-defense—Burden of Proof.

The burden is on defendant to show self-defense upon trial for a homicide, when there is sufficient evidence to show an unlawful killing of another.

3. Instructions — "Contentions" — Misstatement by Judge — Appeal and Error.

If the statement of the contentions by the judge is not as full as desired, it is appellant's duty to ask for specific instructions, and if the judge inadvertently states a contention incorrectly, it should be called to his attention.

4. Instructions—Homicide—Verdict—Harmless Error.

An exception to an instruction relating to murder in the second degree becomes immaterial when the prisoner has been found guilty of manslaughter by the jury.

5. Homicide—Manslaughter—Self-defense—Evidence—Requisites.

It is the duty of one who is assaulted to abandon the difficulty and avoid the necessity of killing, if he can do so with reasonable safety; and one who enters into a fight willingly and does not abandon it, but prefers to stand his ground and continue in the fight, is guilty of manslaughter at least, if he kills.

APPEAL from *Pell, J.,* at the Fall Term, 1910, of WATAUGA.

This is an indictment against Daniel Yates for murder. The jury returned a verdict of "guilty of manslaughter," and from the judgment of imprisonment for seven years in the State's Prison pronounced thereon the defendant appealed.

There was evidence upon the part of the State tending to show that on the morning of 16 November, 1909, the defendant, his wife, Bettie Yates, and her two daughters, met with Mrs. Liddy McGuire, wife of the deceased, Jack McGuire, and Mrs.

Nancy Ward, her daughter, in a galax patch in the woods near a disputed line of their respective lands. After a conversation between the defendant and Mrs. Liddy McGuire, in regard to the manner of settlement of the disputed line, the defendant and his wife, Bettie Yates, passed on up the hill in the direction of the defendant's home, and also in the direction of Sam Hicks', where the defendant claims that he had started to have a tooth extracted. After traveling a distance of from 100 to 150 yards, they passed within a few steps of the deceased, who was coming down the ridge with a rifle-gun on his shoulder, while the defendant was armed with a 16-gauge shotgun, and immediately after meeting, the trouble commenced.

Mrs. Liddy McGuire, witness for the State, testified, in part, as follows: That she, her two daughters, the defendant, his wife and her two daughters, were in the woods the morning of the difficulty; that she and the defendant had a conversation about the land in dispute; that after defendant and his wife had passed on, she heard a dispute between the defendant and the deceased, some distance away in the woods; that they were disputing about the line; that she heard curse words pass; that witness asked her husband if that was he talking, and he said, "Yes." Yates said, "Yes, and by G——, I am up here, too." They kept adding words back and forth. "I cannot recollect how they were spoken. Dan started off like he was going home and my husband started down like he was going home, and Dan said, 'G—— d—— you, I will shoot you.' He was talking loud; he had walked between 15 and 20 steps from where I was —from McGuire—after they spoke and had this talk together. When he said that, my husband turned and the gun fired in his face. At the time my husband was shot he had his gun on his shoulder, and when he was shot it fell breech foremost in front of him."

Mrs. Nancy Ward, daughter of deceased, corroborated the statement made by Mrs. Liddy McGuire in most essential parts.

Dr. H. B. Perry, witness for the State, said, on cross-examination, that the range of the shot in the head and face indicated that the deceased and defendant were standing face to face when the gun was fired; that there were 37 shots from the middle of the neck to just above the forehead.

The defendant, Daniel Yates, testified in his own behalf, in part: That on the day of the difficulty he started to Sam Hicks' to have a tooth extracted; that he took his wife along to show her where the line in dispute was; that in going around the line they met Liddy McGuire, wife of deceased; that after talking to Mrs. McGuire for some time as to the location of the line in dispute, he proposed to leave the matter to disinterested parties, to which proposition she seemed to assent; that after talking over the matter he and his wife started up the ridge, and after going from 100 to 150 yards they passed the deceased coming and within eight or ten steps of him; that he spoke to deceased and deceased muttered something which defendant did not understand; that deceased appeared to be mad. After passing deceased, the deceased called to defendant, and said, "Dan Yates, I want you to get out of here; get out of these woods, and take your G—— d—— set with you." Defendant told him he had a right there and he was not going. "He said, 'Yes, G—— d—— you, you will leave.' I said, 'I am not going.' He said, 'Yes, you are; I will make you.' I said to him, 'D—— you, show me your authority.' And he said, 'G—— d—— you, I can shoot you and drag you out,' and he cocked his gun and started to shoot me. The first thought that entered my mind was to ask him not to shoot. I said, 'Jack, don't draw that gun.' The next thought that run through my mind was to shoot, and I shot. He cocked his gun first and had it up. I had my gun on my shoulder when we first met, and he did, too. (Here witness indicated position in which the guns were held by the parties.) After he cocked his gun and had it up, then I raised mine as quick as I could and shot."

"I shot McGuire because I thought he was going to shoot me. I thought to save myself, I would shoot. In the beginning I was walking away from him. I saw he was very mad, and when I passed, I turned facing him for fear he would shoot me, and I thought if I should face him we would have a few words and he would go off and there would be nothing of it. Before I would have shot him I would have turned, but I was afraid he would shoot me if I turned my back. I wasn't thinking about any trouble. I knew it was his mail day. I just

saw him a day or two before that and he was perfectly friendly; he proposed to sell me some hay and I said I guess I would buy it."

Witness said he had known deceased nearly all his life; knew the general character of the deceased as being a dangerous, violent, fighting man; a bad man, overbearing man, wanted everything his own way. That his wife, Bettie Yates, had told him the evening before that he aimed to kill him, and said, "By G——, he had enough money to burn him up." That his wife told defendant deceased made that threat in the galax patch.

There was evidence in corroboration of the evidence of the defendant.

*Attorney-General Bickett and Assistant Attorney-General G. L. Jones for the State.*

*T. A. Love and L. D. Love for defendant.*

ALLEN, J. The evidence offered on the part of the State tended to show that the defendant was guilty of murder in the second degree, at least, while the evidence of the defendant and of the witnesses introduced to corroborate him, if believed by the jury, would have justified a verdict of not guilty.

It is evident that the jury did not accept, in its entirety, the evidence of the State or of the defendant, and that the verdict, guilty of manslaughter, was rendered upon the theory that the defendant and the deceased fought willingly, of which there was ample evidence.

The only exceptions appearing in the record are to parts of the charge of the judge presiding, as follows:

"Now, gentlemen, did he do it in self-defense? The burden is upon him to satisfy you of the facts and circumstances constituting self-defense. Now, the defendant contends that he had great fear of his life when he shot the deceased; that he did not intend to shoot him, nor did he willingly shoot him, but that it was only through dire necessity—that is, only through the fear that he would lose his own life or have serious bodily harm inflicted upon him if he did not shoot. The defendant contends that he said to the deceased man: 'If you draw that gun on me,

I will shoot you'; and the defendant contends further that he calculated that when he did tell him, 'Not to point your gun at me; I will shoot you,' that by that expression the deceased man should have understood that if he did not point his gun at him he would not shoot; the defendant contends that on that occasion he was not at fault; that there was no reasonably safe way for him to escape; that he was afraid if he turned his back and went towards his home he would be shot in the back; that he was afraid of his life, and that it was through dire necessity that he shot him." Defendant excepts.

"Now, gentlemen, if you should find from the evidence that McGuire and Yates each held malice towards the other, and they each armed themselves with a gun for the purpose of fighting it out when they met, and they met accidentally and a quarrel ensued in which both engaged, and Yates killed McGuire, it was at least murder in the second degree, and it makes no difference whether Yates was on his own land or not, it appearing in this case that the land upon which the difficulty took place was in dispute." Defendant excepts.

"If you shall find from the evidence that McGuire sent word to Yates or told Mrs. Yates, who communicated it to her husband, that he was going to kill Yates, and Yates for the purpose of defending himself and not for the purpose of venting his malice and satisfying his revenge upon McGuire, armed himself with a gun and met McGuire accidentally, and engaged in a dispute with McGuire, but not with unfriendliness upon his part, and McGuire attempted to shoot Yates, or acted in such manner with his gun as to cause Yates to have reasonably grounded fear that unless he shot McGuire, McGuire would shoot him, and, acting under this apparent necessity, Yates shot McGuire, Yates would not be guilty, unless at some time before the fatal moment and after Yates had seen the danger of continuing the dispute with McGuire, and had observed McGuire's evil disposition to engage in a gun fight, Yates could have, with reasonable safety, abandoned the difficulty and avoided the necessity of shooting McGuire. For if, after the two entered into the dispute, both having deadly weapons in their hands, Yates perceived that McGuire was going to shoot if he did not

desist from the dispute, and Yates did not desist, but preferred to continue the dispute, and kept his gun in a position on equal terms with McGuire in order to get the drop on him when the dispute had gotten to such fever heat that McGuire would attempt to shoot him, then the defendant Yates would be guilty, at least, of manslaughter, he not being allowed, under the law in such case, to plead self-defense." Defendant excepts.

"If you shall find from the evidence that, when on meeting up with McGuire, the defendant Yates willingly entered into a dispute with McGuire; and if you shall further find that the defendant Yates willingly stood his ground and engaged in the quarrel with McGuire, both having deadly weapons in their hands; and if you shall further find that Yates, willing to stand his ground and willing to engage in the fight, raised his weapon every time McGuire raised his, in order that he might not let McGuire get the drop on him, and that in such fight the defendant killed McGuire, Yates would not be allowed to interpose the plea of self-defense, but would be guilty of manslaughter." Defendant excepts.

"If you shall find from the evidence that the defendant Yates met up with McGuire by accident, and shall find also that he did not have his deadly weapon with him for an unlawful purpose, and also find that said Yates endeavored to make peace with McGuire, but should further find that during the conversation defendant Yates got mad with McGuire, and in the heat of an ungovernable temper decided he would shoot it out with McGuire, and did shoot and kill McGuire in this heat of passion, the defendant Yates would be guilty of manslaughter, and you should so find, and would be so even though McGuire was in the act of drawing his own weapon upon him." Defendant excepts.

None of these exceptions can be sustained.

His Honor properly instructed the jury that the burden of proof was on the defendant to satisfy them of the facts and circumstances constituting self-defense, and the remaining part of the charge covered by the first exception consists of a statement of the contention of the defendant.

If not as full as the defendant desired, it was his duty to

ask for specific instructions, and if the judge inadvertently stated a contention incorrectly, it ought to have been called to his attention. *Simmons v. Davenport,* 140 N. C., 411; *Davis v. Keen,* 142 N. C., 502.

It is not necessary to consider the second exception, as the charge excepted to relates to murder in the second degree, and the defendant was convicted of manslaughter.

The third and fourth exceptions are to parts of the charge which embody well-settled principles.

It is the duty of one who is assaulted to abandon the difficulty and to avoid the necessity of killing, if he can do so with reasonable safety; and one who enters into a fight willingly and does not abandon it, but prefers to stand his ground and continue in the fight, is guilty of manslaughter, at least, if he kills.

The charge is set out in full in the record, and it shows that all phases of the evidence favorable to the defendant were presented to the jury.

No error.