This is an indictment for the murder of George McCain on 28 October, 1912. It was alleged by the State that the prisoner knew that the deceased had a large amount of money on his person, and that he lured him into a swamp, about 300 or 400 yards from the station at Aberdeen on the Seaboard Air Line Railway, for the ostensible purpose of gambling with him, but for the real purpose of robbery. The two were seen entering the swamp about 4:30 or 5 o'clock p. m. on the day of the homicide, and shortly thereafter two reports of a gun were heard, and deceased's body was found that night about 8 o'clock, with a fatal wound in the breast and one in the head, the side of his face having been blown off. The prisoner was seen about 6 o'clock, going in the (335) direction of the home of his father, Joab Lane, where he lived, and tracks of the prisoner were also found leading from the place of the homicide in the direction of that house. The prisoner had promised Julia Jones, who had picked cotton on that day for his father, to return *Page 300 
in the afternoon and weigh the cotton for her, and he did not do so, according to her statement, though he told the officer, Dan McDonald, that he had returned to his home for that purpose. There was evidence tending to show a close resemblance between shells in the prisoner's gun and two empty shells, one found near the body of the deceased and the other at a place in a field where prisoner had shot a rabbit on that day. When the body was found, the pockets of the deceased, where the money was, had been turned inside out, all the money was gone, the playing cards had been torn up, and a receipt and railroad pass with the name of the deceased on it, and a flat pint-bottle containing about a teaspoonful of scuppernong wine, were found near the body, the prisoner having been seen with such a bottle full of wine on the same day, just before the homicide was committed, having marks on it corresponding with those on the bottle that was found near the body. The prisoner made contradictory statements as to his whereabouts that day, and after being arrested, escaped from the officers, fled, and was not recaptured for several days. He made a confession in jail, to one Judson Jackson, that he had killed the deceased, in a manner indicating premeditation and deliberation, and robbed him of the money, $141. He then went down the creek and to his home, where he hid the money under a pile of cotton. The prisoner denied that he had killed the deceased or had made any confession to Jackson. He also introduced evidence to show an alibi and to explain the circumstances, evidence of which was offered by the State. Under the evidence and charge of the court, the jury returned a verdict of guilty of murder in the first degree. Judgment was entered upon the verdict, and the prisoner appealed.
(336) After stating the case: This case was very carefully tried in the court below, and the charge of the court is to be commended for its very clear and comprehensive statement of the law as applicable to every phase of the evidence, and for an equally lucid and logical analysis of the evidence itself, so that the issues were presented to the jury fairly and fully for both parties. There was undoubtedly evidence of the prisoner's guilt, and this was explained to the jury in such a way that the prisoner, at least, has no ground for complaint. If there is any error therein — and we do not think there is — it was committed in favor of the prisoner, and not against him. We will consider the exceptions in the order of their statement in the record. *Page 301 
 Exception 1. When the court admitted the testimony of Dr. McLeod, that the empty shell was "found at the body," and upon afterwards discovering that the witness was speaking from hearsay, ruled it out, the error, if any, based upon the misapprehension of counsel and the court as to the nature of the testimony, was harmless, for the court distinctly and emphatically excluded it and cautioned the jury not to consider it. Cowlesv. Lovin, 135 N.C. 488; Livingston v. Dunlap, 99 N.C. 268; Blalock v.Clark, 137 N.C. 140; S. v. Keen, 95 N.C. 646; and more especially S. v.Flemming, 130 N.C. 688; S. v. Ellsworth, ibid., 690. We cannot assume that the jury disobeyed the court's instruction and considered the evidence, but we must presume the contrary, unless prejudice appears or is shown by the appellant in some way. The burden is on him to prove it. Rush v. SteamboatCo., 67 N.C. 47; Thomas v. Alexander, 19 N.C. 385.
Exceptions 2 and 3. The testimony of E. Hillman, that the man he saw coming towards Joab Lane's house looked like the defendant, was competent in connection with the other evidence of identity. Similar rulings have been sustained by the following authorities: 17 Cyc., 132; S. v. Lytle,117 N.C. 799; S. v. Costner, 127 N.C. 566; and more recently by S. v.Carmon, 145 N.C. 481, where the impression of the witness as to identity, based upon knowledge of the person, was less pronounced. But the evidence was afterwards excluded, and this rendered it harmless, even if at first it was erroneously admitted; and the same reason applies to exceptions 4, 5, 8, and 9, for the (337) testimony as to the examination and comparison of the three empty shells was withdrawn, with a proper caution to the jury in regard thereto, the gun and shells having been handed to the jurors for their inspection, by consent of the parties. Even then the court instructed the jury not to consider their own inspection of them, unless they found that they had been properly identified. The rights of the prisoner were fully guarded at every point.
Exception 6. The objection to the testimony of Dan Chambers came entirely too late. It was discretionary with the judge whether he would strike it out at that stage of the case, after it had been admitted without objection. S. v. Efler, 85 N.C. 585. But the probative force of the testimony was so slight that the prisoner could not have been prejudiced thereby. If it tended to prove anything, it was that the prisoner knew the deceased had much money, or was in the habit of carrying "a big wad of money," and this was a relevant circumstance in view of the strong trend of the evidence that robbery was his purpose when he went into the swamp on the afternoon of the homicide. *Page 302 
 Exception 7. The question put to the witness David Knight, who was deputy sheriff, as to finding keys at the place of the homicide belonging to deceased, was not answered, nor was the nature of the evidence which was proposed to be elicited disclosed by the prisoner. We cannot, therefore, see that there was error. In re Smith's Will, 163 N.C. 464; S. v. Rhyne,109 N.C. 794; Sumner v. Candler, 92 N.C. 634; Knight v. Killebrew,86 N.C. 400. We must know what the answer would have been before we can pass upon the competency or relevancy of the evidence. Besides, as it now appears to us, the evidence was irrelevant and harmless, if we are to judge by the question.
Exceptions 10, 11, 12, and 13. These exceptions were taken to the refusal of the court to admit evidence of statements made by another person that he had killed McCain, and that another person was seen going in the direction of the swamp with a gun. It was expressly decided in S. v. Boone, 80 N.C. 461, citing S. v. Duncan, 28 N.C. 236; S. v. May, 15 N.C. 328, and S. v. White, 68 N.C. 158, that on (338) a trial for murder, evidence of the declarations of a third party that he killed the deceased are inadmissible as hearsay and as not tending to disprove the guilt of the prisoner. In S. v. Davis, 77 N.C. 483, it was held that "evidence that a third party had malice towards the deceased, a motive to take his life and an opportunity to do so, and had made threats against him, and that some time before deceased was killed he went in the direction of deceased's house with a deadly weapon, threatening to kill him, was inadmissible," and this case was approved in S. v.Lambert, 93 N.C. 618, citing in support of the principle S. v. Jones,80 N.C. 415; S. v. Beverly, 88 N.C. 632; S. v. Gee, 92 N.C. 756. There is no direct testimony to connect the third person with the corpus delicti, and nothing to show that his guilt, if there is any evidence to prove it, is inconsistent with the guilt of the prisoner. S. v. Millican,158 N.C. 617; S. v. Baxter, 82 N.C. 602; S. v. Bishop, 73 N.C. 44; S. v.White, 68 N.C. 158. The subject is fully considered by Justice Allen in theMillican case, supra. It will be seen from the citations we have made that this Court has uniformly and rigidly adhered to the rule which excludes such evidence. Recently the question was decided in Donnally v. U.S.,228 U.S. 243 (57 L.Ed., 820), where the declaration of his own guilt of the homicide was made by a person who was then in extremis and aware of his dying condition. The Court held the evidence incompetent, and said: "In this country there is a great and practically unanimous weight of authority in the State courts against admitting evidence of confessions of third parties, made out of court, and tending to exonerate the accused." The Court held that technically it was not a declaration against interest, which must be of a pecuniary *Page 303 
character, affecting some property right or interest, citing the BerkeleyPeerage Case (1811), 4 Campbell, 401; Sussex Peerage Case (1844), 11 Clark and F., 85, 8 Jur., 793.
Exception 14. The court properly stopped counsel when commenting upon matter of which there was no evidence. The courts are liberal to counsel in argument, and generally permit much latitude to them when addressing the jury, but they must be careful not to go beyond their privilege and introduce irrelevant matters calculated to divert the minds of the jurors from the true issue and to prejudice the (339) other side. Hopkins v. Hopkins, 132 N.C. 25.
The remaining exceptions relate to the refusal of the court to instruct the jury as requested, and to the charge itself. There was no evidence of self-defense or manslaughter. The court charged the jury fully and correctly as to murder in the first degree. The instruction, that if the prisoner intentionally killed the deceased with a deadly weapon, towit, a gun, the law implied malice and the prisoner would be guilty of murder in the second degree, is well sustained by the cases. In all indictments for homicide, when the intentional killing is established or admitted, the law presumes malice from the use of a deadly weapon, and the defendant is guilty of murder (now in the second degree) unless he can satisfy the jury of the truth of facts which justify or excuse his act, or mitigate it to manslaughter. The burden is on the defendant to establish such facts to the satisfaction of the jury, unless they arise out of the evidence against him. This rule has been uniformly adhered to by this Court in indictments for homicide. S. v. Quick, 150 N.C. 820. This principle has been reiterated by us in more recent cases. S. v. Worley, 141 N.C. 764; S. v. Yates,155 N.C. 450; S. v. Rowe, ibid., 436; S. v. Simonds, 154 N.C. 197; S. v.Cox, 153 N.C. 638; S. v. Fowler, 151 N.C. 731, and formerly in S. v. Clark,134 N.C. 698; S. v. Brittain, 89 N.C. 481. An intentional killing with a deadly weapon being shown, the defendant, therefore, was guilty of murder in the second degree, unless he satisfied the jury of matters mitigating or excusing the homicide. The judge also charged correctly as to murder in the first degree, and the instruction, that if the killing was done in the perpetration of or in the attempt to perpetrate a robbery, it would be deemed a murder in the first degree, was directly within the terms of the statute, 3631. The jury, nevertheless, could convict of murder in the second degree (Revisal, sec. 3271), or acquit, and they were so charged by the court, but they should, of course, be governed by the testimony, and find truly according to the fact. S. v. Matthews, 142 N.C. 621. The judge seems to have given substantially every prayer requested by the prisoner, or at least those which were correct in *Page 304 
(340) law and to which he was entitled. Some so given were more favorable than the prisoner had any right to expect. The charge, in regard to the nature of circumstantial evidence and how the jury should consider it, was certainly free from any error of which the prisoner can complain, and so was the charge upon the doctrine of reasonable doubt.S. v. Adams, 138 N.C. 688. There is no particular formula prescribed by the law for defining or stating what is meant by a reasonable doubt. S. v.Whitson, 111 N.C. 695; S. v. Adams, supra.
Whether the request for instructions, submitted after the jury had retired to their room, should have been given was within the discretion of the court. S. v. Hairston, 121 N.C. 579; Shober v. Wheeler, 113 N.C. 370. There not only was no abuse of the discretion, but the charge was so clear and comprehensive that the jury could not have misunderstood it, and the additional instruction was not necessary for any further consideration of the case.
The judge charged the jury that they could give any one of three verdicts — first degree murder, second degree murder, and acquittal — and granted requests of the prisoner for instructions which were exceedingly favorable to him. The evidence convinced the jury of his guilt, and it was amply sufficient for that purpose. The facts pointed to him alone as the perpetrator of the crime, and his own confession, of course, greatly increased the force of the evidence against him. It was made under such circumstances to his fellow-prisoner in jail as to carry conviction of its truth, especially when it is considered in the light of the other evidence.
After a careful review of the record, no error is disclosed.
No error.
Cited: Warren v. Susman, 168 N.C. 464; Schas v. Assurance Society,170 N.C. 421; S. v. Lowry, 170 N.C. 735; S. v. Wilkes, 170 N.C. 736; S. v.Merrick, 172 N.C. 872; S. v. Spencer, 176 N.C. 715; S. v. Brinkley,183 N.C. 723; S. v. Freeman, 183 N.C. 746; S. v. Benson, 183 N.C. 799; S.v. Miller, 185 N.C. 684; S. v. Levy, 187 N.C. 589; S. v. Ashburn,187 N.C. 723, 725; S. v. Stewart, 189 N.C. 347; S. v. Prytle, 191 N.C. 699;S. v. Church, 192 N.C. 660; S. v. Johnson, 193 N.C. 704; S. v. Carpenter, 193 N.C. 848; S. v. Newsome, 195 N.C. 556; S. v. Lawrence, 196 N.C. 576; S.v. English, 201 N.C. 299; S. v. Gregory, 203 N.C. 531; S. v. Banks,204 N.C. 239; S. v. Langley, 204 N.C. 689; S. v. Ammons, 204 N.C. 758; S.v. Kluttz, 206 N.C. 728; S. v. Alston, 215 N.C. 714; S. v. Kelly,216 N.C. 645; S. v. Herndon, 223 N.C. 210; S. v. Vicks, 223 N.C. 387; S. v.Church, 231 N.C. 42; S. v. Streeton, 231 N.C. 306. *Page 305 
(341)