### STATE v. A. MARVIN MITCHELL.

(Filed 11 December, 1935.)

**1. Criminal Law L e—**

Where a new trial is awarded defendant for error in the exclusion of evidence, other exceptions, relating to other rulings upon the evidence and the charge of the court need not be considered.

**2. Homicide G c—Held: Proper predicate was laid for admission of testimony of dying declarations.**

Where it appears that deceased, a few hours before his death, made the dying declarations sought to be admitted in evidence by defendant, that at the time of making the declarations deceased was in imminent danger of death as the result of five gunshot wounds, that he was in a very weakened condition and stated to one witness that he felt he was "fading out" *is held* sufficient basis for the admission of his dying declarations in evidence, it not being required that deceased should actually express his apprehension of imminent death, but only that it satisfactorily appear from the relevant facts and circumstances that he did apprehend the danger of imminent death.

**3. Same—Dying declarations held material to the issue and were improperly excluded over defendant's objection.**

The evidence disclosed that deceased and defendant, a white man, were well acquainted. Defendant offered testimony of dying declarations of deceased, after laying proper predicate for their admission in evidence, to the effect that deceased recognized his assailant as a white man and recognized his dress and build, but did not have any idea who his assail-

1—209

ant was. *Held:* Testimony of the dying declarations was material to the issue as tending to show that the assailant was someone other than defendant, and its exclusion constitutes reversible error.

DEVIN, J., took no part in the consideration or decision of this case.

APPEAL by the defendant from *Williams, J.,* at the June Special Term, 1935, of WAKE.    New trial.

On Saturday night, 20 April, 1935, about 10 o'clock, Ross C. Teague, manager of the Raleigh Laundry, while preparing for deposit the money which had been collected by the drivers during the week, was assaulted and robbed by an unidentified person in the laundry at 411 South East Street in Raleigh.    In the assault Teague suffered five gunshot wounds, inflicted by .32 calibre bullets, as a result of which he died in Rex Hospital about 8:15 o'clock the following morning.    Subsequently, the defendant was arrested, charged with the murder of Teague, and upon his trial set up as a defense, *inter alia,* an alibi.

From a sentence of death, based upon a verdict of guilty of murder in the first degree, the defendant appealed, assigning errors.

*Attorney-General Seawell and Assistant Attorney-General Aiken for the State.*

*Chas. U. Harris and Jones & Brassfield for defendant, appellant.*

SCHENCK, J.    The appellant makes many assignments of error, both to the rulings upon the evidence and to the charge of the court, but under the view we take of the case it becomes necessary to discuss but one group of these assignments, since we hold that they entitle the defendant to a new trial.

There was evidence tending to show that the deceased knew well the defendant, that they had often met and conversed, and that the defendant for many months worked in a filling station close by the laundry of the deceased, and that they had each often been in the place of business of the other.

The State's witness, Dr. P. Y. Greene, testified that he saw the deceased immediately after he was brought to the hospital a short time after he was shot about 10:20 o'clock p.m., on 20 April, 1935, and that he was conscious and able to talk, but was rapidly going into "what we term shock," and that his body was becoming cold and his pulse rapid. On cross-examination, Dr. Greene was asked: "You say he made a statement to you?" and upon objection by the State the court refused to permit an answer, to which refusal the defendant reserved an exception. In the absence of the jury the witness answered the foregoing question as follows: "Officer Bennett asked me if I thought the man was likely

to die, and I replied, 'Yes,' and he asked me if I would ask if he had any idea who shot him, and I asked Mr. Teague in the presence of the officer, and he said he did not know, and I asked him if it was a white man or a colored man, and he said it was a white man. . . . I asked him if he knew who it was, and he said he had no idea."

Another State's witness, Bruce Poole, captain of city detectives, on cross-examination, was asked the following question: "Did Mr. Teague at that time make a statement as to the identity of the man who shot him?" and upon objection by the State the court refused to permit an answer, to which refusal the defendant reserved an exception. In the absence of the jury the witness answered the question as follows: "I asked Mr. Teague who shot him and he told me he didn't feel like talking—that he felt like he was fading out, and I asked him would he answer a question, and he said he would, and I asked him if it was a white man or a colored man, and he said, 'A white man,' and I asked him how he was dressed, and he said, 'About like you,' and I said, 'What size was he?' and he said, 'About like you,' and he looked kinder like he was fading like and I waited and thought I would talk to him some more when he got to feeling better and thought I would wait around, and I stayed until five o'clock in the morning to try to get a statement from him, and that is all I ever got."

"In Greenleaf Ev., sec. 158 (16 Ed.), it is said that while it is essential that the deceased was under the sense of impending death, it is not necessary that he should so state at the time. It is enough, if it satisfactorily appears, in any mode, that the declarations were made under that sanction; whether it be directly proved by the express language of the declarant or be inferred from his evident danger, or the opinion of the medical or other attendants, stated to him, or from his conduct or the circumstances in the case, all of which are resorted to in order to ascertain the state of the declarant's mind." *S. v. Watkins,* 159 N. C., 480 (484). "The rule for the admission of such testimony is thus laid down in Taylor on Evidence, sec. 648: 1. At the time they (the dying declarations) were made, the declarant should have been in actual danger of death, (2) that he should have a full apprehension of his danger, and (3) that death should have ensued." *S. v. Mills,* 91 N. C., 581 (594).

"Dying declarations are admissible on a trial for murder as to the fact of the homicide, and the person by whom it was committed in favor of the defendant as well as against him." *S. v. Blackwell,* 193 N. C., 313; *Mattox v. U. S.,* 146 U. S., 140, 36 Law Ed., 917; Wigmore on Evidence (2d Ed.), Vol. 3, par. 1452, p. 187.

We are of the opinion that the testimony of the witness Greene and of the witness Poole elicited by the answers to the questions to which objections were sustained and exceptions reserved, was competent under

the authorities cited, and we are further of the opinion that such testimony was material to the issue, since it appears that the defendant was well known to the deceased and that the deceased had opportunity to and did see his assailant and recognized that he was a white man, and recognized his dress and build, but did not know him or have any idea who his assailant was. This evidence was material as tending to show that the assailant was someone else than the defendant, and we hold that its exclusion was prejudicial error, and entitles the defendant to a new trial; and it is so ordered.

New trial.

DEVIN, J., took no part in the consideration or decision of this case.