STATE OF NORTH CAROLINA v. DAVID WILLIAM DANGERFIELD

No. 7626SC749

(Filed 6 April 1977)

1. **Criminal Law § 21— indictment returned — no necessity for preliminary hearing**

    Defendant was not entitled as a matter of right to a preliminary hearing where a bill of indictment was returned before the date of a preliminary hearing scheduled by the court pursuant to G.S. 15A-606(d).

2. **Homicide § 21— second degree murder — sufficiency of evidence**

    The State's evidence was sufficient to support a verdict finding defendant guilty of the second degree murder of his wife where it tended to show that the wife's body was found in a rural area with numerous wounds on the head and face; death was caused by head injuries inflicted by blows from a heavy object; on the night of the crime a woman's screams and sounds of pounding on the floor came from the wife's apartment; defendant and another person carried a large object covered by a blanket from the wife's apartment and placed it in a car; several items in the wife's bedroom were stained with blood matching that of deceased; defendant's bloody handprint was found on a doorknob inside the bedroom; bloodstains were found on the rear seat of defendant's car; and carpet had been removed from the rear floorboard and the front seat belts had been cut out of defendant's car.

3. **Criminal Law § 73— threat by third person — hearsay**

    In this prosecution of defendant for the murder of his wife, testimony that a few days before her death deceased told the witness that her boyfriend was trying to kill her and asked the witness to call defendant was not admissible to show deceased's state of mind,

State v. Dangerfield

i.e., her fear for her life, where there was no evidence which would have put deceased's state of mind at issue, and the testimony was properly excluded as hearsay.

4. **Criminal Law § 113— jury's recollection of evidence — instruction — absence of request**

In the absence of a request, the trial court was not required to instruct the jury that he had no opinion with regard to the evidence and that his statement of the evidence should not be considered if it differed from the jury's recollection of the evidence, particularly where the court did instruct the jury that it should take only its recollection of the evidence in arriving at a verdict.

APPEAL by defendant from *Thornburg, Judge.* Judgment entered 18 March 1976 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 16 February 1977.

Defendant was charged by indictment in proper form with first degree murder and entered a plea of not guilty. He was convicted by a jury of second degree murder and, upon that verdict, judgment was entered sentencing him to imprisonment for a term of 40 years.

The State introduced evidence which tended to show that on 8 November 1975, the dead body of Robyn Dangerfield, the wife of the defendant, was discovered in a rural area in Mecklenburg County by two young girls riding horseback. Deceased's body was burned in several places and had received numerous wounds in the head and face. Around the neck were the remnants of a burned rope, and a tooth lay on the ground beside the body. Police investigators also found a Winston Light cigarette butt approximately 12 inches from the body. An autopsy revealed that Mrs. Dangerfield died 25 to 48 hours prior to the time her body was discovered. Death was caused by massive blunt force head injuries inflicted by blows from a heavy object.

At the time of her death, Mrs. Dangerfield lived in Apartment # 4 of the Morningside Apartments in Charlotte. Billy Eury testified that on 7 November 1975 he visited a friend who lived in Apartment # 3 of the Morningside Apartments. At approximately 2:00 a.m. that morning, " . . . a scream came from the next apartment over. . . . It was a very loud scream, and it was definitely a woman. . . . About approximately the same time music started quite loud. . . . And about the same time started a loud beating on the floor. . . . The heavy pound-

ing on the floor and the music went on for four or five minutes. Then everythng was quiet. Nothing else happened."

Edith Peppler, who lived in Apartment # 2 in the Morningside Apartments testified that at approximately 2:00 a.m. on the morning of 7 November 1975 she was awakened by " . . . the most ungodly noise I have ever heard in my life. . . . [I]t might have been somebody screaming or something."

Robert Deaton, Sr., who lived in Morningside Apartments across the hall from the Dangerfield apartment, testified that after going to bed on 6 November 1975 he was awakened by a car pulling into the parking lot behind his apartment. He got out of bed and looked out his window and saw defendant standing beside his car. Deaton returned to bed, and the car went away. Later, however, Deaton heard a car return and again rose to investigate. He again saw defendant standing in the parking area beside his car. Soon thereafter, another car came into the parking lot, and Deaton observed defendant walk to it. One of the cars left but later returned, and Deaton saw defendant and another man walking up an embankment to the rear of the apartment. Again, one of the cars left and returned, and Deaton then heard someone coming up the back steps to the Dangerfield apartment. Deaton subsequently heard someone on the steps and observed defendant and another man going down the steps. The other man was carrying over his shoulder an object draped by a blanket. As they returned to the car, defendant opened the right rear door, and, after the other man threw the object into the car, both men got into the car and drove away.

Edward Faison, who lives in the Morningside Apartments directly underneath Deaton, testified that in the early morning hours of 7 November 1975 he heard a car enter the parking lot behind his apartment, looked out his window and recognized defendant's car. He saw defendant get out of his car, go up to his (defendant's) apartment, turn around, go back to the car and smoke a cigarette. Defendant then drove away but returned in 30 or 40 minutes, whereupon he entered his apartment. Faison then ". . . heard this loud pounding of the floor, sounded like on the wall. . . ." After approximately 30 or 40 minutes, ". . . everything got quiet and in about ten minutes, all of a sudden the door opened and I heard somebody coming down the steps, walking real heavy, the fire escape steps." Faison then

State v. Dangerfield

saw defendant and another person walking down the steps from defendant's apartment. They were carrying something "as big as a trash can bag" which they threw into a parked car. They then got into the car and drove away.

Investigating officers discovered several items in Mrs. Dangerfield's bedroom that were stained with blood which matched deceased's. Defendant's bloody handprint was found on the doorknob inside the bedroom. Defendant's car, which was searched with his consent, had blood stains in the rear seat. Police also found that the rear carpet had been removed from the rear floorboard and that the front seat belts were cut out. There was also evidence that defendant smoked Winston Light cigarettes, the same type as the cigarette butt found near deceased's body.

Defendant testified in his own behalf in substance as follows: He and his wife were married on 3 May 1974. Beginning in January 1975, defendant and deceased underwent a series of separations and reconciliations. They lived together in Apartment # 4 of the Morningside Apartments from 1 October 1975 through 2 November 1975, at which time defendant decided to separate again from his wife. On the night of 2 November, defendant and his brother Keith drove separately to the Morningside Apartments. While Keith waited in the parking lot, defendant took his wife to a tavern, left her there and then returned to the apartment alone. He and Keith then broke into the apartment by breaking a pane of glass in the back door, cutting defendant's hand in the process. They removed defendant's possessions from the apartment, brought them down the rear steps to the parking lot and loaded them into defendant's car. Defendant further testified that he never saw his wife after 2 November and that he was at his brother's apartment during the early morning hours of 7 November.

Other relevant facts are set out in the opinion below.

*Attorney General Edmisten, by Associate Attorney Richard L. Griffin, for the State.*

*Frank Patton Cooke for defendant appellant.*

MORRIS, Judge.

[1] Defendant was arrested on 19 November 1975. On 20 November, he made an initial appearance in the district court

before Johnson, Judge, pursuant to G.S. 15A-601. At that time, defendant filed a motion demanding a probable-cause hearing pursuant to G.S. 15A-606. However, the district attorney announced in open court during the initial appearance that at the next session of the Mecklenburg County grand jury he intended to submit a bill of indictment charging defendant with murder. On 24 November, the presiding district court judge set defendant's probable-cause hearing for 11 December. However, Judge Johnson entered an order on 28 November which made findings of fact and concluded " . . . as a matter of law that the defendant is not entitled to as a matter of right to have the State conduct a probable cause hearing and that a probable cause hearing is not an essential prerequisite to the return of a bill of indictment." The grand jury's next session began on 1 December 1975, and defendant was served with the true bill of indictment on 5 December. The probable-cause hearing was never held.

In his first and second assignments of error, defendant contends that the trial court committed prejudicial error in failing to order that defendant was entitled as a matter of right to a probable-cause hearing. We disagree.

Prior to the adoption of Chapter 15A of the General Statutes, a criminal defendant could be tried on a bill of indictment without the necessity of a preliminary hearing. *E.g., State v. Foster,* 282 N.C. 189, 192 S.E. 2d 320 (1972). However, G.S. 15A-606 states:

> "(a) The judge must schedule a probable-cause hearing unless the defendant waives in writing his right to such hearing. A defendant represented by counsel, or who desires to be represented by counsel, may not before the date of the scheduled hearing waive his right to a probable-cause hearing without the written consent of the defendant and his counsel.

> . . .

> (d) If the defendant does not waive a probable-cause hearing, the district court judge must schedule a hearing not later than 15 working days following the initial appearance before the district court judge; . . . " .

In *State v. Sutton,* 31 N.C. App. 697, 230 S.E. 2d 572 (1976), this Court held that G.S. 15A-606 does not entitle a criminal

defendant to a probable-cause hearing as a matter of right after a bill of indictment has been returned. We noted that "[w]e find nothing in Chapter 15A or its legislative history which demonstrates the legislature's intention to alter the preexisting rule which dispensed with the requirement for a preliminary, or probable-cause, hearing when the defendant has been charged by indictment." *Id.* at 700, 230 S.E. 2d at 574.

In the present case, defendant's hearing was properly scheduled within the 15 working-day requirement of G.S. 15A-606(d). However, the necessity for the hearing was eliminated by defendant's subsequent indictment on 5 December. Therefore, we fail to see how the order of 28 November denying defendant's motion could possibly have been prejudicial to defendant. These assignments are overruled.

**[2]** At the close of State's evidence and again at the close of all the evidence, defendant moved for "a directed verdict of not guilty." The trial judge denied both motions, and defendant assigns these rulings as error. Defendant's motions are properly treated as motions for judgment as of nonsuit. *State v. Britt,* 285 N.C. 256, 204 S.E. 2d 817 (1974). In ruling upon the motions, the trial court is required to view the evidence in the light most favorable to the State and to give the State the benefit of every reasonable inference and intendment to be drawn therefrom. *State v. McKinney,* 288 N.C. 113, 215 S.E. 2d 578 (1975). Contradictions and discrepancies, even in the State's evidence, are for the jury to resolve and do not warrant the granting of the motion. *State v. Cox,* 289 N.C. 414, 222 S.E. 2d 246 (1976). If there is evidence, direct, circumstantial, or both, from which the jury can find that the defendant committed the offense charged, the motion should be overruled. *State v. Jones,* 287 N.C. 84, 214 S.E. 2d 24 (1975). Applying these principles to the present case, we believe there is plenary evidence in the record to overcome defendant's motions and to take the case to the jury. This assignment is overruled.

**[3]** At trial, one of defendant's witnesses was Lolanda Fisher, an employee in a convenience food store in Charlotte. She testified that on 4 November 1975, Robyn Dangerfield had come into the convenience store and " . . . wanted to hide in the stockroom. When she came in, she was moving very fast. She was very upset. She was crying." Fisher further testified, outside the presence of the jury, that Mrs. Dangerfield said that

her boyfriend was trying to kill her; that she asked Fisher to phone her husband but that he did not answer; that she wanted to hide in the stockroom; that Fisher called a cab for Mrs. Dangerfield; that Fisher temporarily closed the store and Mrs. Dangerfield hid in the rear of the store until the cab arrived; and that Mrs. Dangerfield left in the cab. The court ruled that the testimony was inadmissible, and defendant assigns as error the exclusion of this evidence. We disagree.

"Evidence, oral or written, is called hearsay when its probative force depends, in whole or in part, upon the competency and credibility of some person other than the witness by whom it is sought to produce it." *State v. Branch,* 288 N.C. 514, 529, 220 S.E. 2d 495, 506 (1975); *State v. Bryant,* 283 N.C. 227, 230, 195 S.E. 2d 509, 511 (1973); 1 Stansbury, N. C. Evidence, § 134, p. 458 (Brandis Rev. 1973). When the evidence is offered for any purpose other than to prove the truth of the matter stated, it is not hearsay. *State v. Crump,* 277 N.C. 573, 178 S.E. 2d 366 (1971). Our courts have long held that threats made by a third person against the deceased are hearsay and therefore inadmissible. *State v. Duncan,* 28 N.C. 236 (1846). Defendant, however, contends that the testimony was admissible, not to show that deceased's boyfriend had threatened her, but rather to show her state of mind, i.e., her fear for her life. While evidence of the declarations showing the state of mind of a decedent are sometimes admissible, this is true only where the state of mind is at issue in the case. Stansbury notes that any state of mind may be shown by contemporaneous declarations " . . . whenever a person's intention or design is considered relevant . . . " 1 Stansbury, N. C. Evidence, § 162, p. 541 (Brandis Rev. 1973). *See also* 6 Wigmore on Evidence, § 1790, pp. 237-40 (3rd Ed. 1940).

Defendant cites two cases, *State v. Prytle,* 191 N.C. 698, 132 S.E. 785 (1926), and *State v. Miller,* 16 N.C. App. 1, 190 S.E. 2d 888 (1972), *modified on other grounds,* 282 N.C. 633, 194 S.E. 2d 353 (1973), as authority for his position that the testimony was admissible under the state-of-mind exception to the hearsay rule. We find neither case persuasive. In *Prytle,* the defendant was on trial for the murder of his wife, and he alleged as a defense that she committed suicide. Our Supreme Court held that declarations of the wife tending to show her despondent state of mind were not violative of the hearsay rule. In *Miller,* the defendant, a "house man" employed at a

State v. Dangerfield

gambling house, was charged with the murder of a police officer, and he claimed that the killing was in self-defense. This Court held that statements which defendant received from third parties concerning robberies of other gambling games were admissible " . . . as bearing upon the reasonableness of defendant's apprehension that a robbery might have been in progress when he saw unidentified armed men walking rapidly into the room." 16 N.C. App. at 13, 190 S.E. 2d at 896. Thus, state of mind was clearly relevant in each instance. In the present case, however, there is no claim of self-defense or any other allegation which would put decedent's state of mind at issue. The testimony, therefore, was properly excluded by the trial court. This assignment is overruled.

[4] Defendant contends that the trial court erred in failing to instruct the jury " . . . that he had no opinion with regard to the testimony, and that his statement of the evidence, if it differed from that of the jury, was not to be considered, but that the jury should take only their recollections of the evidence in arriving at their verdict." However, the record reveals that defendant failed to ask for such instruction. It is well settled in this State that such instructions are not required absent a request therefor, particularly where, as here, the court did instruct the jury that they should be guided by their own recollections of all the evidence. *State v. Biggerstaff,* 226 N.C. 603, 39 S.E. 2d 619 (1946) ; *State v. Harris,* 213 N.C. 648, 197 S.E. 142 (1938) ; *State v. Chappell,* 23 N.C. App. 228, 208 S.E. 2d 508 (1974). This assignment is overruled.

We have reviewed defendant's other assignment of error and find it to be without merit. Defendant has received a fair and impartial trial free from prejudicial error.

No error.

Judges VAUGHN and MARTIN concur.