STATE OF NORTH CAROLINA v. ROSCOE ROAN COUCH, JR.

No. 7721SC689

(Filed 7 February 1978)

1. Criminal Law § 35— evidence showing possibility of another's guilt
      The trial court in a homicide prosecution properly excluded defendant's evidence that a neighbor of deceased was a member of a motorcycle gang involved in a shooting, a member of the rival gang was in the vicinity on the night of the shooting inquiring about the neighbor's residence, and the neighbor thought the man who shot deceased intended to kill him instead, since the evidence did not point directly to the guilt of another and was thus not relevant on the question of guilt.

**2. Criminal Law § 89.4— prior statement not inconsistent**

  In this homicide prosecution, a detective's prior statements in a newspaper article which speculated that the murder may have resulted from motorcycle gang warfare were not admissible as prior inconsistent statements since the detective's testimony at trial based on personal observations was not inconsistent with the possibility that after the shooting and before defendant's confession he had other possible theories.

**3. Homicide § 30.2— murder trial—failure to charge on manslaughter**

  Evidence in a murder case that defendant was upset when deceased unexpectedly returned to his home and interrupted defendant's tryst with deceased's wife, causing defendant to jump out of a window nine feet above the ground, did not require the court to charge on the lesser offense of manslaughter in view of defendant's confession that he went to his car and got a shotgun, went to a neighbor's yard, and shot deceased when he walked out on a porch.

**4. Homicide § 8— drunkenness as defense**

  Voluntary drunkenness is a defense to a charge of first degree murder to the extent that it precludes the mental process of premeditation and deliberation, but it is no defense to second degree murder.

APPEAL by defendant from *Lupton, Judge.* Judgment entered 21 March 1977, in Superior Court, FORSYTH County. Heard in the Court of Appeals 10 January 1978.

Defendant was convicted of second-degree murder and appeals from judgment imposing a sentence of 60 years.

On 13 October 1975, James Cecil (deceased), his wife, Hannah, and their six children occupied a house in Winston-Salem. The adjoining house on one side was occupied by the Corams. The house on the other side was rented. On that day about 11:20 p.m. Mr. Coram heard shots outside and went out to investigate; he saw an old car with loud mufflers twice pass in front of the house. Mrs. Cecil came out and said her husband had been shot. She wore a loose fitting dress which was unzipped. She wore nothing under the dress. Coram went next door and found James Cecil face down in the yard near the front porch. There were wounds about his body, and he was dead.

On 16 September 1976, defendant was a prisoner in the State Prison Camp at Mocksville, serving a term for bad checks and assault by pointing a gun. About 10:00 p.m. he asked a prison guard to call the Sheriff of Forsyth County so that he could confess to a murder. The call was made, and Detective McGee arrived at the prison camp about midnight. He advised defendant of

his *Miranda* rights. Defendant stated that he understood and signed a written waiver. Defendant made an oral confession, which was then reduced to writing, and signed it. The signed statement was as follows:

> "I, Roscoe Couch, give the following statement: On the night of James Cecil's death I was sitting beside Hannah's bed talking when we both heard someone come up out front. She thought it might be James so she wanted me to leave. I went out the back of the house to my car. I think it was a 1962 or '67 Chevy, blue in color. It was parked in front of Grant Koontz' house at the time. I picked up the shotgun, I think it was a Remington Automatic shotgun. I went from my car back to Grant's house. There was no one home at his home. I turned around to leave when James came out of the front of the house. I thought he had a gun in his hand at the time so I pulled the trigger of the shotgun. I think I shot two times. I fired the gun without even thinking. I guess I got scared and ran. I had known Hannah for about thirty days. I met her at the Frosty Mug. We had been seeing each other for a period of time. I thought they were separated. She had shown me pictures of James but I had never seen him in person."

Detective Grindstaff, Forsyth County Sheriff's Department, who had been in charge of investigating the James Cecil murder, arrived at the prison camp about 3:30 a.m., advised defendant of his rights, and defendant again confessed, relating to Grindstaff substantially what he had told Detective McGee, adding that he was in a drunken condition and remembered vaguely what happened after the shooting. Grindstaff further testified that defendant was a suspect in the James Cecil murder and that he had talked with him 6 or 7 times. Once he talked with defendant in the McLeansville Prison Unit, and defendant told him he was afraid that someone was going to kill him.

Defendant had married Hannah Cecil, wife of deceased, on 31 December 1975. She was killed in a traffic accident in January 1976.

Loretta Cecil, age 11, daughter of deceased and Hannah testified that she heard defendant say to her mother, "Honey, I'm sorry for killing James."

Defendant testified that on the date of the shooting he did not know James and Hannah Cecil. On that date he spent the entire night at the trailer home of William Crouse. He met Hannah Cecil a few weeks after the shooting and married her in late December, 1975. While in prison he was threatened by an inmate named Rothrock. He was so afraid that Rothrock would kill him that he confessed to the murder in order to get out of the Mocksville Prison Unit.

Defendant's alibi testimony was supported by several witnesses.

*Attorney General Edmisten by Associate Attorney Ben G. Irons II for the State.*

*Pettyjohn & Molitoris by H. Glenn Pettyjohn and Theodore M. Molitoris for defendant appellant.*

CLARK, Judge.

[1] Was defendant's evidence that someone else committed the crime admissible? The defendant attempted to offer evidence, particularly in cross-examination of Detective Grindstaff, that there had been a shootout between rival motorcycle gangs, that Grant Koontz (neighbor of James Cecil) was a member of one of the gangs, that on the night of the shooting a red-headed man named Sam was in the vicinity inquiring about the residence of Grant Koontz, and that Koontz thought that the man who shot James intended to kill him (Koontz).

The admissibility of evidence which tends to prove that another committed the crime for which the accused is being tried is governed by relevancy—whether it proves or disproves, or tends to prove or disprove the crime charged or any fact material to the issue. 1 Stansbury's N.C. Evidence (Brandis Rev.) § 93.

An examination of the cases in North Carolina reveals that the defendant has had little success in offering evidence tending to incriminate others. The courts have ruled that the evidence was inadmissible because it did not point directly to the guilt of a third party, but only raised an inference or conjecture of another's guilt. *State v. Shinn*, 238 N.C. 535, 78 S.E. 2d 388 (1953) (evidence that others in the community were known to deal in liquor where defendant was charged with illegal possession); *State*

*v. Smith,* 211 N.C. 93, 189 S.E. 175 (1937) (evidence that another was near the scene of the crime when the burglary was perpetrated); *State v. Stewart,* 189 N.C. 340, 127 S.E. 260 (1925) (evidence that officers had a warrant for someone other than defendants charged with murder; *State v. Ashburn,* 187 N.C. 717, 122 S.E. 833 (1924) (evidence that another had been seen frequently with the mother, a codefendant charged with the murder of her infant); *State v. Wiggins,* 171 N.C. 813, 89 S.E. 58 (1916) (evidence that two other men were seen the evening before near the spot where deceased was shot); *State v. Lane,* 166 N.C. 333, 81 S.E. 620 (1914) (evidence of statements made by another person that he had killed the deceased). But in *State v. Mitchell,* 209 N.C. 1, 182 S.E. 695 (1935) and *State v. Blackwell,* 193 N.C. 313, 136 S.E. 868 (1927), it was held error to exclude the dying declaration that another person did the killing.

In the case *sub judice* we find the evidence offered by the defendant, to the effect that deceased's neighbor was a member of a motorcycle gang which was at war with another gang, was speculative, did not point directly to others, and was thus not relevant to the issue of guilt. The trial court did not err in excluding this evidence.

[2] The defendant assigns as error the exclusion of evidence during cross-examination of Detective Grindstaff about alleged prior inconsistent statements appearing in a newspaper article which speculated about the murder resulting from motorcycle gang warfare. The evidence was entirely speculative and not relevant on the issue of defendant's guilt. Nor was it admissible as a prior inconsistent statement. The testimony of the witness at trial based on personal observation was not inconsistent with the possibility that after the shooting and before defendant's confession, a period of 11 months, he had other possible theories. Since the witness had not given testimony with which the purported statements were inconsistent, the court properly excluded the purported statements. See *State v. Pearce,* 268 N.C. 707, 151 S.E. 2d 571 (1966).

[3] The defendant contends that the trial court erred in failing to charge on manslaughter and also drunkenness as a defense. The State's case was based on defendant's confession, which included defendant's statement that he was upset when the husband (deceased) returned. It is understandable that the unex-

pected return of the husband, which interrupted defendant's tryst with deceased's wife and forced him to jump out of a window nine feet above the ground, would upset the defendant, but this alone was not sufficient to require a charge on manslaughter in view of defendant's statement that he went to his car and got a shotgun, returned to a neighbor's yard, and shot deceased when he walked out on the porch. The trial court is not required to charge the jury upon the question of defendant's guilt of lesser degrees of the crime charged in the indictment where there is no evidence to sustain a verdict of defendant's guilt of such lesser degrees. 4 Strong's N.C. Index, 3rd ed., Criminal Law, § 115.

[4] The only evidence of drunkenness was defendant's statement in his confession to Detective Grindstaff to the effect that he was in a drunken condition and did not remember what happened after the shooting. Defendant was convicted of second-degree murder. Voluntary drunkenness is no defense to murder in the second degree. It is a defense to the charge of first-degree murder to the extent that it precludes the mental processes of premeditation and deliberation. *State v. Wilson*, 280 N.C. 674, 187 S.E. 2d 22 (1972).

We have examined defendant's other assignments of error but find them to be without merit.

No error.

Judges MORRIS and MITCHELL concur.