## STATE v. JOHN ANDREW ROMAN.

### (Filed 21 May, 1952.)

**1. Criminal Law § 79—**

Exceptions in support of which no reason or argument is stated or authority cited in the brief will be taken as abandoned, Rule of Practice in the Supreme Court No. 28, but where defendant is convicted of a capital felony, the Supreme Court will nevertheless examine the matters to which such exceptions relate in its search for prejudicial error.

**2. Homicide § 25: Criminal Law § 52a (3)—**

Circumstantial evidence of defendant's guilt of murder in the first degree *held* to exclude any reasonable hypothesis of innocence, and sufficient to take the case to the jury and support a verdict of guilty of the offense charged.

**3. Criminal Law § 53f—**

In this prosecution in which defendant offered no evidence, the charge of the court *is held* not subject to the criticism that it gave the State's evidence in too great detail so as to amount to a statement of the State's contentions. G.S. 1-180.

**4. Homicide § 27c: Criminal Law § 53c—**

The evidence tended to show that defendant raped his victim and also inflicted stab wounds and abrasions causing death. *Held:* In a prosecution for first degree murder the court was not required to define rape. G.S. 14-17.

APPEAL by defendant from *Pless, J.,* at January Criminal Term, 1952, of DAVIDSON.

Criminal prosecution upon a bill of indictment charging that "John Andrew Roman, late of the county of Davidson, on the 12th day of August, A.D. 1951, with force and arms, at and in the county aforesaid, unlawfully, wilfully, feloniously and of his malice aforethought, did kill and murder Mrs. Beulah Miller Hinshaw against the form of the statute in such case made and provided and against the peace and dignity of the State."

The record and case on appeal discloses these facts:

Defendant, upon arraignment, pleaded not guilty.

Defendant moved that the court in his discretion, order a special venire of jurors to be summoned from some other county than Davidson County

as provided by law. The motion was allowed, and it was agreed by attorneys for defendant and by the solicitor for the State that a special venire be ordered from Guilford County. And defendant requested that the proper proportion of Negroes be included in the venire and suggested that this should be from 25 to 33 per cent, and this suggestion was accepted by the court.

The names of the 50 special venire jurors from Guilford County were placed in the hat by the clerk and child under ten years of age drew their names from the hat in accordance with law. The following named jurors were selected and sworn and impaneled as jurors in the trial of this case: C. R. Johnson, and eleven others, naming them, four of whom were members of the Negro race. And in like manner an alternate juror was selected, sworn and impaneled, and thereupon the jury was again impaneled.

Upon the trial in Superior Court, the State offered evidence tending to show this narrative: Mrs. Beulah Miller Hinshaw, a widow, 65 years of age, residing alone in her home on South Main Street in the city of Lexington, North Carolina, came to her death at some time on Sunday night, 12 August, 1951, after the hour of 9 o'clock. Her body, practically nude, and battered, bruised and cut, was found about 8 o'clock on the morning of 13 August, 1951, in the back hall of her home, lying on papers, books, and other contents emptied from nearby trunks, and covered with a counterpane or bedspread. Blades of grass and trash were on a garment upon which her body rested. Autopsy revealed, and medical expert expressed opinion, in summary, that the primary cause of her death was traumatic shock from trauma consisting of numerous abrasions and contusions on the body, larceration of the left side of neck, stab wound of left chest wall, four fractured ribs over left side, and stab wound of left lung with hemorrhage,—that all contributed to and caused her death. There were wounds and abrasions indicating, in opinion of medical expert, that "her vagina had been entered by some means."

The screen door at the back porch of her home had been cut, at a point where the inside latch could be reached, and the back door was unfastened. Her ear-bobs were found on the back steps. In the northwest corner of her backyard the grass was trampled down. At this place her glasses, in broken parts, were found. So were torn pieces of her under garments. A left foot boot, with top cut off, was found between a little building, just back of her back door, and the north corner of the yard.

Inside the house and in one of the opened trunks in the back hall, there was a small metal box, which bore indications of fingerprints. Dresser drawers were opened and contents strewn about. A purse of money was not missing.

Mrs. Hinshaw owned a wrist watch. She also had her deceased husband's watch and pistol.

Defendant worked for an ice company. His duties were pulling ice and tending the platform after the plant closed in the evening until the next morning. He wore boots—with tops cut off. On Sunday night, 12 August, 1951, about 8:30 o'clock, he left the ice plant in one of the plant trucks, saying that he was going to carry his wife to the hospital. He was wearing cut off boots. After 9:30 o'clock his wife was at home and he was not there. He returned to the plant around 11:30 o'clock that night. He was barefooted. Later his right foot boot, with top cut, was found at the plant.

The fingerprints of the metal box, found in the opened trunk of Mrs. Hinshaw were, in opinion of expert, his fingerprints. The left boot, found back of Mrs. Hinshaw's house, in opinion of expert, matched the right foot boot of defendant found at the plant.

The watches and the pistol, above referred to, were found a day or so later in a pack house across the street from the ice plant,—to which pack house defendant alone at the time had a key.

And there was evidence of other circumstances.

Defendant did not testify, nor did he offer evidence upon the trial. But officers testified that he proclaimed his innocence.

Verdict: That the defendant, John Andrew Roman, is guilty of the felony of murder in the first degree as charged in the bill of indictment.

Judgment: Death by inhalation of lethal gas as required by law.

Defendant excepted thereto, and appeals to Supreme Court, and assigns error.

*Attorney-General McMullan and Assistant Attorney-General Claude L. Love for the State.*

*Hosea V. Price for defendant, appellant.*

WINBORNE, J. The record of case on appeal discloses that defendant groups his exceptions under eleven assignments of error. In his brief here he states four questions as being involved on the appeal. But he confines his argument exclusively to the assignment of error based upon exceptions to failure of the trial court to charge the jury in accordance with provisions of G.S. 1-180, as amended by Chap. 107 of 1949 Session Laws of North Carolina.

Hence, those exceptions, in support of which no reason or argument is stated or authority cited, will be taken as abandoned by him in accordance with provisions of Rule 28 of the Rules of Practice in the Supreme Court—221 N.C. 544, at pages 562-3. Nevertheless, since this is a capital felony, we have examined the matters to which those exceptions relate, and find in them no merit.

Indeed, the incriminating circumstances, revealed by the evidence offered by the State are "of such nature and so connected or related as to point unerringly to the defendant's guilt and to exclude any other reasonable hypothesis." *S. v. Stiwinter,* 211 N.C. 278, 189 S.E. 868. See also *S. v. Fulk,* 232 N.C. 118, 59 S.E. 2d 617. Such evidence is legally sufficient to take the case to the jury, and to support a verdict of guilty on the charge under which defendant stands indicted.

And in respect of the exception presented, and argued by defendant, we turn to the provisions of the statute—G.S. 1-180, as so amended. It reads: "No judge, in giving a charge to the petit jury, either in a civil or criminal action, shall give an opinion whether a fact is fully or sufficiently proven, that being the true office and province of the jury, but he shall declare and explain the law arising on the evidence given in the case. He shall not be required to state such evidence except to the extent necessary to explain the application of the law thereto; provided, the judge shall give equal stress to the contentions of the plaintiff and defendant in a civil action, and to the State and defendant in a criminal action."

It is contended that the court stated the evidence in too much detail, and too great length,—so much so that it amounted to a statement of the State's contentions, rather than of the evidence,—that this is true, particularly in view of the fact that the defendant introduced no evidence.

However, from a careful reading of the charge, as given, in the light of the provisions of this statute, and of the situation in hand, it does not appear that the trial judge transgressed either the letter or the spirit of the statute.

It is also contended that the trial court, in charging the jury, erred in not defining the crime of rape, in connection with definition of murder in the first degree—G.S. 14-17. In the light of the testimony offered by the State as to the cause of the death of decedent, it would seem unnecessary for the court to define rape. The court charged thoroughly and clearly as to the element of premeditation and deliberation. And the bill of indictment is in compliance with the form prescribed by statute, G.S. 15-144. See also *S. v. Kirksey,* 227 N.C. 445, 42 S.E. 2d 613.

Finally, we say, and hold that error is not made to appear in the record and case on appeal in the case in hand.

No error.