STATE OF NORTH CAROLINA v. ZOLLIE WILSON, JR.

No. 1

(Filed 15 March 1972)

1. **Criminal Law § 166— abandonment of exceptions and assignments of error**

   Exceptions and assignments of error not brought forward into the brief are deemed abandoned. Supreme Court Rule 28.

2. **Criminal Law § 42— weapons used in crime**

   Weapons may be admitted in evidence where there is evidence tending to show that they were used in the commission of a crime.

3. **Criminal Law § 42; Homicide § 20— gun used in homicide — sufficiency of identification**

   In this homicide prosecution, a shotgun was sufficiently identified as the one used in the crime for its admission in evidence, where a witness testified that he threw the shotgun used in the shooting from a car and thereafter told a police officer where it was, and the officer testified that he found the shotgun where the witness stated he had thrown it, that he delivered it to the S.B.I., that it was received from the S.B.I. by another officer, and that it was his opinion that the gun offered in evidence was the same gun so found by him; even if the admission of the shotgun was error, it was harmless in view of the testimony of five eyewitnesses that defendant shot deceased with a shotgun.

4. **Homicide § 21— failure to introduce weapon**

   While relevant, the identification and the introduction in evidence of the weapon used is not essential to a conviction of murder.

5. **Criminal Law § 162— objection to responsive answer**

   An objection to an answer responsive to a question comes too late after the witness has so answered the question.

6. **Homicide § 20— photograph of body — illustrative purposes**

   A photograph of the body of deceased was properly admitted in evidence in a homicide prosecution for the purpose of illustrating the testimony of a witness as to the location of a wound on the body.

State v. Wilson

### 7. Homicide § 15— fact of death — non-expert testimony

A non-expert who has observed a deceased person is competent to testify as to the fact of death.

### 8. Homicide § 15— cause of death — non-expert testimony

While it is the usual and better practice in a prosecution for homicide to offer medical testimony as to both the fact of death and the cause of it, even the cause of death may be established by non-expert testimony when the facts in evidence are such that every person of average intelligence would know from his own experience or knowledge that an observed wound was mortal in character.

### 9. Homicide § 21— fact and cause of death — non-expert testimony — sufficiency of evidence

There was ample evidence in this homicide prosecution to support a finding both of the fact of death and that the cause of death was the shooting of the deceased by the defendant, where the State's evidence tended to show that deceased was shot by defendant in the chest or upper abdomen with a shotgun at close range, that he fell immediately and that blood flowed from the wound, and non-expert witnesses who observed the body testified that deceased was dead on arrival at a hospital shortly after the shooting occurred.

### 10. Homicide § 4— first degree murder — intent to kill

A specific intent to kill is an essential element of first degree murder.

### 11. Criminal Law § 6; Homicide § 8— defense of intoxication

While voluntary drunkenness is not, per se, an excuse for a criminal act, it may be sufficient in degree to prevent and, therefore, disprove the existence of a specific intent, such as the intent to kill.

### 12. Homicide § 28— defense of intoxication — instructions

The trial court's instructions in this homicide prosecution properly presented to the jury the question arising upon the evidence with reference to the intoxication of defendant and correctly stated the law applicable thereto.

### 13. Homicide § 28— failure to instruct on "unconsciousness"

In this homicide prosecution, defendant's testimony that, by reason of his voluntary intoxication, he did not "remember" the shooting or anything about it did not require the court to instruct the jury, as requested by defendant, that "when a person commits an act without being conscious thereof, such act is not a crime even though if committed by a conscious person it would be a crime."

APPEAL by defendant from *Braswell, J.*, at the 6 June 1971 Session of WARREN.

By an indictment, proper in form, the defendant was charged with the murder of Charlie Wilbert Alston. The jury returned a verdict of guilty of murder in the first degree, with

recommendation that the defendant be sentenced to imprisonment for life. Judgment in accordance with the verdict was entered. The evidence for the State, consistingly primarily of the testimony of five eyewitnesses, was to the following effect:

On 3 October 1970, Alston and the defendant, along with a number of other people, were at a "piccolo joint." They got into an argument. Thereafter, the defendant went home in a car driven by William Southerland. En route he said that he was tired of people "doing him wrong." Contrary to Southerland's advice, after entering his home, he returned to the car and got Southerland to drive him back to the "piccolo joint."

When the defendant got back to the "piccolo joint," Alston, with a woman companion, was sitting in a parked car on the premises of this establishment waiting for other companions to come out so that they all might go to their homes. The defendant got out of Southerland's car carrying a shotgun, entered the building, looked around for a minute or two and then went back outside. At that time Alston, for some unknown reason, got out of the car in which he had been sitting. In the act of getting out of the car his back was turned to the defendant. Turning around, he was face to face with the defendant, who was some fifteen to twenty feet away. Neither said anything. Alston raised both hands above his head. He had nothing in either hand. Almost immediately the defendant raised his shotgun and fired, the shot striking Alston in the chest or upper abdomen. Alston fell on his back immediately and blood flowed from the wound "over top of his stomach."

The defendant, saying nothing, got back into the car of Southerland who drove him to his home. There they picked up the defendant's woman companion, to whom the defendant announced that he had killed Alston, and drove to a house in Henderson where Southerland left the defendant and his companion and where the defendant was subsequently arrested. En route to his own home, Southerland threw the shotgun into or across a ditch at the end of a dead end road. The investigating officer found a shotgun at the point where Southerland told him he had thrown it. The gun so found was offered in evidence by the State.

Meanwhile, the State's witness Hargrove and another person picked up Alston and carried him to the hospital in Hender-

son. Hargrove testified that when they got to the hospital Alston was dead. Deputy Sheriff Capps, the investigating officer, testified that he saw Alston's body at the hospital, that Alston was dead and that he, Deputy Capps, took photographs of the body with which he illustrated the location of the wound. These photographs and photographs of the scene of the shooting, also identified by Deputy Capps, were introduced in evidence.

William Southerland, a witness for the State, testified that at the time of the original argument each man had a knife in his hand. No witness testified that Alston had anything in his hand at the time of the shooting. Another witness for the State testified that at the time of the argument he heard Alston say to the defendant, "I know you got a knife, but I ain't got no knife."

The defendant testified in his own behalf and offered other witnesses. His testimony was that he had been drinking heavily prior to and after his arrival at the "piccolo joint," and he remembered nothing whatever about the shooting, he having no reason to shoot Alston. Other witnesses for the defendant testified that there was a considerable amount of drinking at the "piccolo joint" on this occasion. Witnesses for the State testified that none of the persons involved in this occurrence were drunk, and Southerland, who drove the car in which the defendant rode to and from the "piccolo joint" on both trips, testified that, in his opinion, the defendant was not under the influence of intoxicants.

There was no evidence of any attack by Alston upon the defendant, any threat by Alston or any justification or reason for the shooting.

*Attorney General Morgan, Assistant Attorney General Hafer and Staff Attorney Davis for the State.*

*Clayton and Ballance by Frank W. Ballance, Jr., for defendant.*

LAKE, Justice.

The defendant assigns as error: (1) The admission in evidence, over objection, of the shotgun, he contending it had not been identified as the weapon used in the shooting of Alston; (2) the failure of the State to prove the cause of death and

the admission of alleged hearsay evidence as to the fact of death; and (3) the failure of the court to instruct the jury, as requested by the defendant, that "when a person commits an act without being conscious thereof, such act is not a crime even though if committed by a conscious person it would be a crime." There is no merit in any of these assignments of error.

[1] Other exceptions and assignments not brought forward into the brief are deemed abandoned. *State v. Baldwin,* 276 N.C. 690, 174 S.E. 2d 526; *State v. Barber,* 270 N.C. 222, 154 S.E. 2d 104; *Branch v. State,* 269 N.C. 642, 153 S.E. 2d 343. Rule 28, Rules of Practice in the Supreme Court. We have, nevertheless, reviewed the entire record before us and find no merit in the assignments of error so abandoned.

As to the shotgun introduced in evidence, the State's witness William Southerland testified that, after leaving the defendant in Henderson following the shooting, Southerland threw the gun out of the car into a ditch and thereafter told Deputy Capps where it was. Deputy Capps testified that, upon receipt of this information, he went to the place described by Southerland, found a shotgun about 20 feet from the other side of the ditch, he delivered the gun so found to the State Bureau of Investigation, it was received back from the Bureau by another deputy and, while it had no identifying feature known to him, it was his opinion that the gun offered in evidence was the same gun so found by him.

[2-4] Weapons may be admitted in evidence where there is evidence tending to show that they were used in the commission of a crime. *State v. Sneeden,* 274 N.C. 498, 502, 164 S.E. 2d 190; Stansbury, North Carolina Evidence, 2d Ed. § 118. We deem the testimony of witnesses Southerland and Capps, above mentioned, sufficient to identify the gun so offered in evidence as the one used in the shooting of Alston, but if it were not, so as to make the admission of this weapon in evidence an error, it was clearly harmless in view of the testimony of five eyewitnesses that the defendant shot Alston with a shotgun. While relevant, the identification and the introduction in evidence of the weapon used is not essential to a conviction of murder. In *State v. Macklin,* 210 N.C. 496, 187 S.E. 785, a shotgun found in the defendant's room was held properly admitted in evidence, it having been testified that it was "like

the one" with which the defendant had been seen on the night the deceased was shot.

[5]   The contention that the court erred in denying the motion for arrest of judgment because there was no competent evidence of the death of Alston, or as to the cause of such death, is without merit. The State's witness Hargrove testified that he picked Alston up and carried him to the hospital after the shooting and that "when we got to the hospital he was dead." The record shows that at this point the defendant objected and the court overruled the objection. The record does not show the question in response to which the witness so answered or that the objection was interposed to such question. An objection to an answer responsive to a question comes too late after the witness has so answered the question. *Johnson v. Lamb*, 273 N.C. 701, 709, 161 S.E. 2d 131; *Brown v. Hillsboro*, 185 N.C. 368, 117 S.E. 41.

On cross-examination, this witness testified: "When I arrived at the hospital he was dead. The doctor said he was dead." Thereupon, in response to questions by the court, not set forth in the record on appeal, the witness testified: "I didn't examine him. When we got to the hospital, I went in and got some stretchers, we got him out of the car and laid him on it and toted him in. He wasn't moving no more than his arm was moving by me picking him up and laying him down." The defendant's motion to strike the answer was overruled. The question not being shown in the record before us, we cannot assume that the answers of the witness both to the question by the defendant's counsel and to the question by the court were not responsive. The witness was obviously testifying on the basis of his own observation of Alston. The statement of the doctor was apparently recounted by the witness as corroboration of his own observation and testimony.

[6]   Deputy Sheriff Capps testified: "I went in the back room [of the hospital] and saw Charlie Wilbert Alston. He was dead at the time I saw him." This witness then identified the photograph of the body taken by him, which photograph was introduced in evidence and used by the witness to illustrate his testimony as to the location of the wound on the body. There was no error in the admission of the photograph in evidence for this purpose. The record not disclosing the question propounded to the witness Capps, it must be assumed that his

testimony was responsive thereto. Consequently, there being no objection to the question, the motion to strike the answer was properly overruled.

The witness William Southerland testified that when he and the defendant arrived at the defendant's home following the shooting, the defendant said to Gertrude Perry he had "killed" Alston and instructed her to "come on" with the defendant and Southerland.

[7-9]   Observation of a deceased person, or of a dead animal, is not so rare an occurrence as to render a non-expert incompetent to testify as to the fact of death in a particular instance. While it is the usual and better practice in a prosecution for homicide to offer medical testimony as to both the fact of death and the cause of it, even the cause of death may be established by non-expert testimony when the facts in evidence are such that every person of average intelligence would know from his own experience or knowledge that an observed wound was mortal in character. *State v. Howard,* 274 N.C. 186, 198, 162 S.E. 2d 495; *State v. Minton,* 234 N.C. 716, 721, 68 S.E. 2d 844. The State's evidence is ample to show that Alston was shot in the chest or upper abdomen with a shotgun at close range, he fell immediately, blood flowed from the wound and, though taken immediately to the hoŕⁱᵗal, he was dead on arrival. There was ample evidence to support a finding both of the fact of death and that the cause of death was the shooting of the deceased by the defendant.

Neither the defendant nor any of his witnesses attempted to deny that the defendant shot Alston, that Alston was dead or that the shooting by the defendant was the cause of his death. Neither the defendant nor any of his witnesses attempted to establish any justification for the shooting of Alston. The defendant's testimony was designed solely to convince the jury that, by reason of his voluntary intoxication, he did not "remember" the shooting or anything about it.

[10, 11]   A specific intent to kill is an essential element of first degree murder. *State v. Propst,* 274 N.C. 62, 71, 161 S.E. 2d 560. While voluntary drunkenness is not, per se, an excuse for a criminal act, *State v. Propst, supra,* it may be sufficient in degree to prevent and, therefore, disprove the existence of a specific intent such as the intent to kill. *State v. Cureton,* 218

N.C. 491, 494, 11 S.E. 2d 469; *State v. Murphy,* 157 N.C. 614, 72 S.E. 1075. As stated by Justice Barnhill, later Chief Justice, in *State v. Cureton, supra:* "No inference of the absence of deliberation and premeditation arises as a matter of law from intoxication; and mere intoxication cannot serve as an excuse for the offender. The influence of intoxication upon the question of existence of premeditation depends upon its degree and its effect upon the mind and passion. For it to constitute a defense it must appear that the defendant was not able, by reason of drunkenness, to think out beforehand what he intended to do and weigh it and understand the nature and consequence of his act."

The learned trial judge instructed the jury:

"There is evidence in this case which tends to show that the defendant was intoxicated at the time of the acts alleged in this case. Generally, voluntary intoxication is not a legal excuse for crime. However, if you find that the defendant was intoxicated, you should consider whether this condition affected his ability to formulate the specific intent which is required for conviction of first degree murder.

"In order for you to find the defendant guilty of first degree murder, you must find beyond a reasonable doubt that he killed the deceased with malice and in the execution of an actual, specific intent to kill formed after premeditation and deliberation.

"If as a result of intoxication the defendant did not have the specific intent to kill the deceased, Charlie Alston formed after premeditation and deliberation, he is not guilty of first degree murder.

"Therefore, I charge you that if upon considering the evidence with respect to the defendant's intoxication you have a reasonable doubt as to whether the defendant formulated the specific intent required for a conviction of first degree murder, you will not return a verdict of first degree murder. You will then consider whether or not he would be guilty of second degree murder."

[12] This charge properly presented to the jury the question arising upon the evidence with reference to the intoxication of the defendant and correctly stated the law applicable thereto.

**[13]** The court having so instructed the jury, the defendant was not entitled to the further instruction requested by him: "When a person commits an act without being conscious thereof, such act is not a crime even though if committed by a conscious person it would be a crime." The present record does not contain evidence of complete unconsciousness such as was deemed to be indicated by evidence of the defendant in *State v. Mercer,* 275 N.C. 108, 165 S.E. 2d 328.

No error.