STATE OF NORTH CAROLINA v. CHARLES DOUGLAS DUNCAN

No. 70

(Filed 13 December 1972)

1. Homicide § 12— indictment for first degree murder — allegation of premeditation and deliberation

An indictment for first degree murder need not allege deliberation and premeditation, it being sufficient if the form prescribed by G.S. 15-144 is followed.

2. Criminal Law § 92— consolidation of murder and assault charges

The trial court properly consolidated for trial indictments charging defendant with the murder of one person and the felonious assault of another person with a shotgun where the assault and murder were so connected as to make one continuous criminal episode, and the evidence of the whole affair is pertinent and necessary to establish the identity of defendant as the guilty party.

State v. Duncan

3. **Homicide § 18— premeditation and deliberation — circumstantial evidence**

Circumstantial evidence is competent to prove premeditation and deliberation.

4. **Homicide § 21— first degree murder — sufficiency of evidence**

The State's evidence was sufficient for the jury on the issue of defendant's guilt of first degree murder of his estranged wife where it tended to show that defendant first shot his wife in the face from the door of his mobile home and then followed her several hundred yards and shot her at close range at least two times with a sawed-off shotgun, and where there was no evidence that deceased had any weapon or at anytime offered any threat to defendant.

5. **Homicide § 15— testimony concerning exhibits not yet introduced — identification**

Where a shotgun and shells had been identified by a police officer as having been found at the scene of a homicide, a firearms identification specialist was properly allowed to testify concerning the shotgun and shells although they had not yet been introduced in evidence.

6. **Homicide § 20— gruesome photographs of victim's body — admissibility**

The trial court did not err in the admission of photographs of a homicide victim taken at the scene of the shooting, including one showing the body of deceased with her internal organs exposed and lying on top of her stomach, where the photographs were properly authenticated as portrayals of conditions observed and related by the witnesses who used the photographs to illustrate their testimony.

7. **Homicide § 28— first degree murder — defense of intoxication — instructions**

In this prosecution for first degree murder, the charge of the court properly presented to the jury the question arising upon the evidence with reference to the intoxication of defendant and correctly stated the law applicable thereto.

8. **Constitutional Law § 36; Criminal Law § 135— sentence of life imprisonment — standing to question death penalty**

Where the jury in a first degree murder prosecution returned a verdict recommending life imprisonment, defendant has no standing to question the constitutionality of the death penalty or of a statute because it provides for that punishment.

APPEAL by defendant from *Friday, J.*, 13 March 1972 Schedule "B" Session of MECKLENBURG Superior Court.

Defendant was charged in one bill of indictment with the murder of Martha Turner Duncan on 28 November 1971 and in another with a felonious assault upon Jack Sanders with a shotgun on the same date. The cases were consolidated for trial.

The evidence for the State tends to show the deceased Martha Duncan was separated from her husband, defendant Charles Douglas Duncan, and was living with her mother in Charlotte. On 28 November 1971 Lillian Sanders, a friend of the deceased, came to visit her, and the two ladies went to the home of Jack Sanders, Lillian Sanders' husband, from whom Lillian was separated at the time. Around 7 p.m. Mrs. Sanders, her husband Jack Sanders, and the deceased went to the Charlotte Trailer Park located on Hovis Road to pick up a coat belonging to the deceased and to visit some of her relatives who resided there. When they arrived at the trailer park, defendant was standing in front of his trailer. A brief verbal altercation took place between defendant and the deceased. The deceased and her companions started to leave but defendant called and said, "Come here." The deceased then said, "Let's go over there and see what he wants." The three started toward the trailer and when they were still approximately 20 to 30 feet from it, defendant fired a shotgun wounding both Jack Sanders and the deceased about the face and head. Jack Sanders told his wife that he had been shot and asked her to call an ambulance. Mrs. Sanders assisted her husband across a ditch and they ran into a church parking lot adjacent to the trailer park where they attempted unsuccessfully to get into a parked car. After trying to get into the car, Mr. and Mrs. Sanders tried to enter the Thomasboro Nazarene Church. However, the church door was locked and they went back to the trailer park where they called an ambulance. While Mr. and Mrs. Sanders were trying to escape, defendant carrying a shotgun chased the deceased, who was bleeding profusely about the face and head, down Hovis Road and through some of the yards abutting the road. As they were running down Hovis Road, defendant fired another shot into the deceased apparently wounding her in the abdomen. When defendant and deceased reached the driveway of a filling station at the intersection of Hovis Road and Hoskins Road, Mrs. Betty Kenner was in her car stopped at a stop sign at that intersection. Defendant and deceased were pulling and pushing each other in the filling station driveway. The deceased leaned toward Mrs. Kenner's car, stretched out her arms and said, "Please." As Mrs. Kenner was attempting to pull her car into the driveway, defendant shot the deceased in the chest and she fell backward on the pavement. Defendant dropped the shotgun to the pavement, stood over the deceased for a moment, and

then ran back to the trailer park. He immediately went into his trailer where he was arrested by the Charlotte City Police about 7:30 p.m.

Martha Duncan died as a result of two massive shotgun wounds, one in the chest and one in the abdomen. She also had wounds on her face, shoulder, and arm from shotgun pellets. The fatal shots were fired from close range, and the wounds were the type caused by a shotgun. A sawed-off .410 gauge shotgun was found lying next to the body of the deceased. Other evidence pertinent to decision will be stated in the opinion.

Defendant offered no evidence.

The jury returned verdicts of guilty of murder in the first degree with recommendation of life imprisonment, and guilty of an assault with a deadly weapon. From a sentence of life imprisonment in the murder case and a sentence of six months' imprisonment in the assault case, defendant appealed. We allowed motion to bypass the Court of Appeals on the assault case.

*Attorney General Robert Morgan and Special Counsel Ralph Moody for the State.*

*T. O. Stennett for defendant appellant.*

MOORE, Justice.

[1] The bill of indictment in this case did not allege premeditation and deliberation. Defendant contends for this reason that his motion to quash should have been allowed. This contention is without merit. The bill of indictment followed the form prescribed by G.S. 15-144, which provides in pertinent part:

> ". . . (I)t is sufficient in describing murder to allege that the accused person feloniously, willfully, and of his malice aforethought, did kill and murder (naming the person killed), and concluding as is now required by law . . . and any bill of indictment containing the averments and allegations herein named shall be good and sufficient in law as an indictment for murder or manslaughter, as the case may be."

This Court has held many times that an indictment for murder need not allege deliberation and premeditation, and that an indictment in the form prescribed by the statute is sufficient.

*State v. Haynes,* 276 N.C. 150, 156, 171 S.E. 2d 435, 439 (1969) ; *State v. Roman,* 235 N.C. 627, 70 S.E. 2d 857 (1952) ; *State v. Kirksey,* 227 N.C. 445, 42 S.E. 2d 613 (1949).

[2] Defendant was charged in one bill of indictment with the murder of Martha Turner Duncan on 28 November 1971 and in another with a felonious assault upon Jack Sanders with a shotgun. The cases were consolidated for trial. Defendant assigns this as error. Both cases arose out of the same set of facts and circumstances on the same occasion. G.S. 15-152 authorizes the consolidation of two or more indictments where the charges are for "two or more acts or transactions connected together." The assault on Sanders with a shotgun and the murder of Mrs. Duncan were so connected and tied together as to make one continuous criminal episode. The evidence of the whole affair is pertinent and necessary to establish the identity of defendant as the guilty party. The two charges were properly consolidated and tried together. *State v. Frazier,* 280 N.C. 181, 185 S.E. 2d 652 (1972) ; *State v. Arsad,* 269 N.C. 184, 152 S.E. 2d 99 (1967) ; *State v. Bryant,* 250 N.C. 113, 108 S.E. 2d 128 (1959) ; *State v. Combs,* 200 N.C. 671, 158 S.E. 252 (1931).

[3] Defendant next contends that circumstantial evidence is not competent to prove premeditation and deliberation, and that the court erred in overruling his motion for judgment as of nonsuit on the charge of first degree murder. "Premeditation and deliberation are not usually susceptible of direct proof, and are therefore susceptible of proof by circumstances from which the facts sought to be proved may be inferred." *State v. Walters,* 275 N.C. 615, 170 S.E. 2d 484 (1969).

> "Among the circumstances to be considered in determining whether a killing was with premeditation and deliberation are: Want of provocation on the part of deceased. [Citations omitted.] The conduct of defendant before and after the killing. [Citations omitted.] Threats and declarations of defendant before and during the course of the occurrence giving rise to the death of the deceased. [Citations omitted.] The dealing of lethal blows after deceased has been felled and rendered helpless. [Citations omitted.]" *State v. Faust,* 254 N.C. 101, 118 S.E. 2d 769 (1961).

The rule as to nonsuit is stated by Justice Higgins in *State v. Stephens,* 244 N.C. 380, 383, 93 S.E. 2d 431, 433 (1956), as follows:

State v. Duncan

"When a case comes here on exception to the refusal of the trial court to sustain the motion to dismiss, the rule applicable to this Court is the same as that applicable to the trial court. Taking the evidence in the light most favorable to the State, if the record here discloses substantial evidence of all material elements constituting the offense for which the accused was tried, then this Court must affirm the trial court's ruling on the motion. The rule for this and for the trial court is the same *whether the evidence is circumstantial or direct, or a combination of both.*" (Emphasis added.)

[4] The evidence in the present case disclosed that defendant first shot his wife in the face from the door of his mobile home and then followed her several hundred yards and shot her at close range at least two times with a sawed-off shotgun. There is no evidence that the deceased had any weapon or at anytime offered any threat to defendant. The want of provocation, absence of any excuse or justification, coupled with the other evidence, permitted a legitimate inference of premeditation and deliberation and was sufficient to be submitted to the jury on the issue of murder in the first degree. *State v. Perry*, 276 N.C. 339, 172 S.E. 2d 54 (1970) ; *State v. Faust, supra.*

[5] Defendant next contends that the court erred in allowing the witness Cleon C. Mauer to testify over defendant's objection as to shells and the gun which at the time had not been introduced in evidence. The sawed-off .410 gauge single-shot shotgun was identified by an officer as having been found near the body of the deceased soon after the shooting occurred. Three empty .410 gauge shotgun shells were also identified by this officer. One of these was found lying near the body, one was in the gun, and the third was found immediately inside the front door of the trailer. A partial box of loaded .410 gauge shotgun shells was also found in defendant's trailer. Mauer, a Firearms Identification Specialist at the Charlotte-Mecklenburg Crime Laboratory at Charlotte, testified that the three spent shotgun shells had been fired from this .410 gauge shotgun. The gun and shells were first identified. Then it was proper for Mauer to testify concerning them. Later in the trial the gun and shells were introduced into evidence. *State v. Wilson*, 280 N.C. 674, 187 S.E. 2d 22 (1972) ; *State v. Bass*, 249 N.C. 209, 105 S.E. 2d 645 (1958) ; *State v. Macklin*, 210 N.C. 496, 187 S.E. 785 (1936) ; Stansbury, North Carolina Evidence § 118 (2d Ed. 1963). This contention is without merit.

[6]  Defendant assigns as error the introduction of photographs of the body of the deceased taken at the scene of the shooting, contending that the pictures are highly inflammatory and prejudicial to defendant. One photograph apparently showed the body of the deceased with her internal organs exposed and lying on top of her stomach. The photographs were not brought forward in the record, but were properly authenticated at the time as portrayals of conditions observed and related by the witnesses who used the photographs to illustrate their testimony. "The fact that a photograph depicts a horrible, gruesome and revolting scene, indicating a vicious, calculated act of cruelty, malice or lust, does not render the photograph incompetent in evidence, when properly authenticated. . . ." *State v. Atkinson,* 275 N.C. 288, 311, 167 S.E. 2d 241, 255 (1969). *Accord, State v. Frazier, supra; State v. Porth,* 269 N.C. 329, 153 S.E. 2d 10 (1967); Stansbury, North Carolina Evidence § 34 (2d Ed. 1963). This assignment is overruled.

[7]  Defendant next contends that the court erred in letting the case go to the jury on the charge of first degree murder where there was ample evidence that defendant was drunk or intoxicated at the time of the shooting. One officer testified for the State that in his opinion the defendant was drunk, but further testified that defendant's voice was clear and that he was able to walk without any help. Another officer testified that he saw the defendant soon after the shooting and that in his opinion defendant was under the influence of some intoxicating liquor. He also testified that when he questioned the defendant: "He understood what I said to him and replied to that correctly. His speech was clear. I understood everything he said. It did not slur at all. I observed an odor of alcohol about his breath. . . . I observed the defendant out there. I talked to him. I watched him walk. He seemed to be a little excited."

With reference to voluntary intoxication as a defense to a charge of murder this Court has said:

"A specific intent to kill is an essential element of first degree murder. *State v. Propst,* 274 N.C. 62, 71, 161 S.E. 2d 560. While voluntary drunkenness is not, per se, an excuse for a criminal act, *State v. Propst, supra,* it may be sufficient in degree to prevent and, therefore, disprove the existence of a specific intent such as the intent to kill. *State v. Cureton,* 218 N.C. 491, 494, 11 S.E. 2d 469; *State v. Murphy,* 157 N.C. 614, 72 S.E. 1075. As stated by Justice

Barnhill, later Chief Justice, in *State v. Cureton, supra:* 'No inference of the absence of deliberation and premeditation arises as a matter of law from intoxication; and mere intoxication cannot serve as an excuse for the offender. The influence of intoxication upon the question of existence of premeditation depends upon its degree and its effect upon the mind and passion. For it to constitute a defense it must appear that the defendant was not able, by reason of drunkenness, to think out beforehand what he intended to do and weigh it and understand the nature and consequence of his act.' " *State v. Wilson,* 280 N.C. 674, 680-81, 187 S.E. 2d 22, 26 (1972).

The trial judge in the present case stated the evidence relating to defendant's intoxication and then instructed the jury:

". . . (I)n order to convict of Murder in the First Degree, the State must satisfy the Jury from the evidence and beyond a reasonable doubt that the defendant unlawfully killed Mrs. Duncan with malice and in addition must satisfy the Jury from the evidence beyond a reasonable doubt that he did so in execution of an actual, specific intent to kill, previously formed after premeditation and deliberation, as heretofore more fully explained to you, Members of the Jury. Now, the Court instructs you that where specific intent is an essential element of the crime, such an actual specific intent to kill, the fact of drunkenness or intoxication may negative the existence of such actual, specific intent.

\*     \*     \*

"Now, the Court instructs you that the mere fact . . . the defendant had been drinking or was under the influence of some intoxicant at the time of the alleged killing is insufficient. It must appear, Ladies and Gentlemen, that he was so drunk as to be mentally incapable of forming an actual, specific intent to kill or to premeditate or to deliberate the killing of Mrs. Duncan. The Court instructs you that if this defendant, Charles Douglas Duncan, at and prior to the time of the killing, was so drunk as to be mentally incapable of forming an actual, specific intent to kill, to premeditate or deliberate the killing of Mrs. Duncan, he would not be guilty of the crime of Murder in the First Degree, but would be guilty of Murder in the Second

Degree or guilty of Manslaughter or not guilty of any crime at all, according as the Jury may find the facts, with reference to other phases and aspects of this case."

This charge properly presented to the jury the question arising upon the evidence with reference to the intoxication of the defendant and correctly stated the law applicable thereto. *State v. Wilson, supra.* This assignment of error is overruled.

[8] Defendant in his brief argues that our statute on murder is unconstitutional and has been invalidated by the decision in *Furman v. Georgia,* 408 U.S. 238, 33 L.Ed. 2d 346, 92 S.Ct. 2726 (1972). This question was not raised in the trial court and is not based on any exception. Appellate courts will not ordinarily pass upon a constitutional question unless it affirmatively appears that such question was raised and passed upon in the trial court. *State v. Grundler* and *State v. Jelly,* 251 N.C. 177, 187, 111 S.E. 2d 1, 8, cert. den. 362 U.S. 917, 4 L.Ed. 2d 738, 80 S.Ct. 670 (1959) ; *State v. Jones,* 242 N.C. 563, 89 S.E. 2d 129 (1955). However, this same contention has been considered by this Court in a number of recent cases and has been decided adversely to defendant's contention. In *State v. Davis,* 282 N.C. 107, 191 S.E. 2d 664 (1972), this Court said:

"The Supreme Court of the United States in *Furman v. Georgia,* 408 U.S. 238, 33 L.Ed. 2d 346, 92 S.Ct. 2726 (1972), held that the imposition of the death penalty, under certain state statutes and in the application thereof, was unconstitutional. That decision did not affect the conviction but only the death sentence. *State v. Westbrook,* 281 N.C. 748, 191 S.E. 2d 68 (1972) ; *State v. Doss,* 281 N.C. 751, 191 S.E. 2d 70 (1972) ; *State v. Chance,* 281 N.C. 746, 191 S.E. 2d 65 (1972) ; *State v. Miller,* 281 N.C. 740, 190 S.E. 2d 841 (1972) ; *State v. Hamby and Chandler,* 281 N.C. 743, 191 S.E. 2d 66 (1972)."

Furthermore, the *Furman* case is without significance when the jury returns a verdict recommending life imprisonment. In that situation the defendant has no standing to raise the constitutionality of the death penalty or of a statute because it provides for that punishment. *State v. Bryant, Holloman and White,* 282 N.C. 92, 191 S.E. 2d 745 (1972) ; *State v. Wright and Glenn,* 282 N.C. 364, 192 S.E. 2d 819 (1972). This contention is overruled.

Other assignments of error have been considered but found to be without merit.

Evidence of defendant's guilt is overwhelming. He was convicted in a trial free from error. The verdict and judgment of the trial court must therefore be upheld.

No error.