STATE OF NORTH CAROLINA v. WILLIAM WELDON STEWART

No. 94

(Filed 7 March 1977)

1. **Homicide § 19— bad conduct or immorality of decedent — inadmissibility**

    The trial court in a homicide case properly excluded testimony that the two victims were operating an illegal liquor business and possibly a house of prostitution since defendant relied on the defense of alibi, not self-defense, and the excluded testimony did not purport to show a violent and dangerous reputation.

2. **Criminal Law § 105— offer of evidence by defendant — waiver of prior nonsuit motion**

    Since defendant offered evidence at the trial he waived his right to urge as error on appeal the denial of his motion to dismiss interposed at the close of the State's evidence; however, his motion for nonsuit at the close of all the evidence draws into question the sufficiency of all of the evidence to go to the jury.

3. **Homicide § 18— premeditation and deliberation — circumstantial evidence**

    Premeditation and deliberation may be inferred from circumstantial evidence.

4. **Homicide § 18— premeditation and deliberation — circumstances to consider**

    Among the circumstances to be considered in determining whether a murder was committed with premeditation and deliberation are (1) want of provocation, (2) the conduct of the accused before and after the killing, (3) threats and declarations of the accused, (4) the use of grossly excessive force or the dealing of lethal blows after the deceased has been felled.

5. **Homicide § 21— premeditation and deliberation — sufficiency of evidence**

    The State's evidence of premeditation and deliberation was sufficient to carry two charges against defendant for first degree murder to the jury where it tended to show that defendant's son cut himself

with a knife when one victim told him to leave because she was too old for him; the victim, defendant and defendant's son thereafter had a long talk at the victim's house; defendant was armed with a .38 pistol at that time; the victim drove defendant's son to his mother's house; when the son later refused to go home with defendant, defendant stated, "If you don't, I am going to go down there and pump six bullets in them"; defendant thereafter entered the house of the victims, shot one victim four times, shot the second victim three times, doused their bodies with gasoline and set them on fire; after the killings defendant left the .38 caliber pistol and three empty cartridges with his brother-in-law and stated that he had just killed one victim, shot the other victim in the head, and threw gas on them and set them afire.

**6. Criminal Law § 69— exclusion of telephone conversation — absence of prejudice**

In this prosecution for first degree murder, defendant was not prejudiced by the exclusion of a telephone conversation in which deceased told defendant's wife that she wanted to tell defendant that his son had cut himself and planned to kill himself since the testimony merely established a reason for the appearance of defendant near deceased's home on the afternoon of the murder, his presence there was later established by other testimony, and the telephone conversation was in no way exculpatory.

**7. Homicide § 30— first degree murder — failure to submit manslaughter**

The trial court in a prosecution for first degree murder did not err in failing to charge on the lesser included offense of manslaughter where the State's evidence tended to show that defendant entered the house of the victims, shot one victim four times and the other victim three times, doused their bodies with kerosene and set their bodies on fire, and where defendant relied on the defense of alibi and produced no evidence tending to rebut the State's evidence with respect to the nature of the crime.

**8. Constitutional Law § 36; Homicide § 31— first degree murder — substitution of life imprisonment for death penalty**

Sentence of life imprisonment is substituted for sentence of death imposed for first degree murder.

DEFENDANT appeals from judgments of *Martin (Perry), J.,* 26 April 1976 Special Criminal Session, HARNETT Superior Court. Docketed and argued in this Court as Case No. 150 at the Fall Term 1976.

Defendant was charged in separate bills of indictment with the first degree murder of Dorothy Jean Tolar Jordan, Case No. 75-CR-8792, and Thelma Maynor Whitehead, Case No. 75-CR-8793, on 29 September 1975 in Harnett County. The cases were consolidated for trial.

The State's evidence tends to show that about 8:30 p.m. on 29 September 1975 three young men saw a black car, described as a 1973 or 1974 model Thunderbird, leaving the yard of the victims Dorothy Jean Tolar Jordan and Thelma Maynor Whitehead. It was dark at the time and these young men could see fire coming from the windows of the Dorothy Jean Tolar Jordan dwelling. The fire was reported at 8:45 p.m.

Firemen arrived on the scene and found the bodies of Dorothy Jean Tolar Jordan and Thelma Maynor Whitehead on the floor. Mrs. Whitehead was dead and Mrs. Jordan died a short time later. There was a strong odor of a flammable substance that smelled like kerosene in the house and both bodies were badly burned. An autopsy performed on Thelma Whitehead revealed three bullet wounds—one in the top of the head, the second and third in the right upper portion of the abdomen. All three bullets were recovered. An autopsy on Mrs. Jordan revealed four gunshot wounds—in the left temple, left upper abdomen, the left wrist and the right forearm. One bullet was recovered from the right arm while the other three had exited the body.

The State's evidence further tends to show that at about 8:35 p.m. on the night of 29 September 1975 defendant went to the home of Fred Hall, a man he had known for many years and who had just recently married defendant's sister. He handed Mr. Hall a .38 caliber pistol and some empty cartridges. He told Mr. Hall: "I just killed old Jean Tolar . . . and there stood Thelma Whitehead, tow-pow right in the top of her head." Then he told Mr. Hall he threw gasoline on their bodies and set them on fire, adding, "I went down there during the day this afternoon . . . I saw blood on my boy's clothes . . . I told them people a long time ago if they ever messed my boy up down there that I'd go back down there and kill them all." Defendant then stated he was going to the auction and drove away in a black car.

The gun and cartridges were recovered by the State Bureau of Investigation. The weapon was offered in evidence as State's Exhibit 29, and the evidence of ballistics experts tends to show that the cartridges had been fired in that weapon and that the bullets recovered from the body of each victim were also fired from State's Exhibit 29.

Evidence for defendant tends to show that on 29 September 1975 defendant's neighbor Yvonne Rainer had the keys to

defendant's Thunderbird which was parked in the yard; that Mrs. Rainer went to defendant's home between 6 and 7 p.m. and saw defendant leave the house in his blue Ford truck around 6:00-6:30 wearing a white T-shirt, white pants, brown London Fog and a brown hunting cap. This neighbor next saw defendant about 10:30 p.m.

Defendant's sister testified that she went to an auction about 7:30 p.m. on the night in question and stayed until 8:50 p.m.; that defendant's Thunderbird was parked at his home when she left; that defendant was seen at the auction by many people. Other defense witnesses testified that they saw defendant at the auction between 7:30 and 9:30 p.m. on 29 September 1975. Defendant himself did not testify.

The trial judge submitted as permissible verdicts in each case (1) guilty of murder in the first degree, (2) guilty of murder in the second degree, or (3) not guilty. The jury found defendant guilty of murder in the first degree in the Dorothy Jean Tolar Jordan case (No. 75-CR-8792) and guilty of murder in the second degree in the Thelma Maynor Whitehead case (No. 75-CR-8793). Defendant was sentenced to death in the Jordan case and to life imprisonment in the Whitehead case. Errors assigned on appeal will be discussed in the opinion.

*Rufus L. Edmisten, Attorney General; M. E. Rich, Jr., Deputy Attorney General; James E. Scarbrough, Associate Attorney, for the State of North Carolina.*

*D. K. Stewart, attorney for defendant appellant.*

HUSKINS, Justice.

[1] Defendant sought to elicit testimony that the two victims were operating an illegal liquor business and possibly a house of prostitution. Exclusion of such evidence constitutes defendant's first assignment of error.

It is generally recognized that in a prosecution for homicide where defendant pleads self-defense, evidence that the deceased was "a violent and dangerous fighting man" is admissible if such propensity was known to defendant or if the evidence in the case is wholly circumstantial. *State v. Morgan,* 245 N.C. 215, 95 S.E. 2d 507 (1956). *See also* 1 Stansbury's North Carolina Evidence (Brandis rev. 1973) § 106 and cases cited. Such evi-

dence *must* be restricted to the character of the deceased for violent action—the general bad conduct or immorality of the decedent may not be proved. *State v. Hodgin,* 210 N.C. 371, 186 S.E. 495 (1936). Thus in *State v. Taylor,* 213 N.C. 521, 196 S.E. 832 (1938), testimony relating to the "bad reputation of deceased's house 'for drinking and frolicking parties' " was properly excluded.

In upholding the exclusion of testimony relating to the homosexuality of the decedent in *State v. Hodgin, supra,* this Court quoted with approval the following statement from Chamberlayne, Modern Law of Evidence § 3295:

> "That the deceased in a case of homicide was a violent, turbulent man, may, on the other hand, be shown by the accused under a plea of self-defense, *but not the fact that he was engaged in selling whiskey, was unchaste or that he was a drinking man where there was no evidence that he had been drinking on the occasion in question."* (Emphasis added.)

Here, defendant pleads alibi, not self-defense, and the evidence proffered does not purport to show a violent and dangerous reputation. Therefore, under long-standing rules of evidence, defendant's first assignment of error is overruled.

Defendant contends the State failed to prove premeditation and deliberation and assigns as error the denial of his motions to dismiss at the close of the State's evidence and at the close of all the evidence.

[2]     Since defendant offered evidence at the trial he waived his right to urge as error on appeal the denial of his motion to dismiss interposed at the close of the State's evidence. G.S. 15-173; *State v. McWilliams,* 277 N.C. 680, 178 S.E. 2d 476 (1971). Nevertheless, his motion for nonsuit at the close of all the evidence draws into question the sufficiency of all of the evidence to go to the jury. G.S. 15-173. *See State v. Robbins,* 275 N.C. 537, 169 S.E. 2d 858 (1969); *State v. Norris,* 242 N.C. 47, 86 S.E. 2d 916 (1955). A motion to dismiss will be treated the same as a motion for judgment of nonsuit. *State v. Cooper,* 275 N.C. 283, 167 S.E. 2d 266 (1969).

Such motion requires the trial judge to consider the evidence in the light most favorable to the State and to give the State the benefit of every reasonable inference to be drawn

therefrom. *State v. Vincent,* 278 N.C. 63, 178 S.E. 2d 608
(1971). All evidence actually admitted, whether competent or
incompetent, which is favorable to the State must be considered
when ruling on the motion. *State v. Walker,* 266 N.C. 269, 145
S.E. 2d 833 (1966). If there is any evidence tending to prove
the fact of guilt, or which reasonably leads to that conclusion
as a logical and legitimate deduction, the motion must be denied.
So, upon motion for nonsuit, the question is whether there is sub-
stantial evidence—direct, circumstantial, or both—to support a
finding that the offense charged has been committed and that
the accused committed it. *State v. Smith and Foster,* 291 N.C.
505, 231 S.E. 2d 663 (1977) ; *State v. McKinney,* 288 N.C. 113,
215 S.E. 2d 578 (1975). With these rules in mind, we now con-
sider whether the State's evidence of premeditation and de-
liberation was sufficient to carry the first degree murder
charges to the jury.

**[3, 4]** Premeditation and deliberation may be inferred from
circumstantial evidence. *State v. Duncan,* 282 N.C. 412, 193
S.E. 2d 65 (1972) ; *State v. Walters,* 275 N.C. 615, 170 S.E. 2d
484 (1969). Among the circumstances to be considered in de-
termining whether a murder was committed with premeditation
and deliberation are (1) want of provocation, (2) the conduct
of the accused before and after the killing, (3) threats and
declarations of the accused, (4) the use of grossly excessive
force or the dealing of lethal blows after the deceased has
been felled. *State v. Van Landingham,* 283 N.C. 589, 197 S.E.
2d 539 (1973) ; *State v. Duncan, supra; State v. Walters, supra;
State v. Faust,* 254 N.C. 101, 118 S.E. 2d 769 (1961).

**[5]** A review of the evidence discloses that William Clifford
Stewart, 22-year-old son of defendant, had been going with
Dorothy Jean Tolar Jordan for about a year. In a conversation
with her on the night of the murders, she told him to leave
because she was too old for him, whereupon he cut himself with
a knife and fled into a nearby field. She followed him and
they were met in the field by his father, the defendant. All
three went back to the house of the deceased and had a long
talk. His father was driving a black Thunderbird and had a .38
pistol with him at that time. He refused to go home with defend-
ant but allowed Dorothy Jean Tolar Jordan to drive him to his
mother's house about thirty minutes later. Later that night
defendant tried to persuade his son to go home with him, and

State v. Stewart

when the son refused defendant said: "If you don't, I am going to go down there and pump six bullets in them."

Other evidence tends to show that defendant shot Dorothy Jean Tolar Jordan four times after which, while she was still alive, he doused her with gasoline and set her body on fire, causing burns over ninety percent of her body.

After the killing he left the pistol and three empty cartridges with Fred Hall and said: "I just killed old Jean Tolar . . . and there stood Thelma Whitehead . . . tow-pow right in the top of her head. . . . I threw gas on them and set them afire."

We hold that premeditation and deliberation are legitimate permissible inferences to be drawn from the foregoing evidence and the first degree murder charges were properly submitted to the jury. Defendant's second assignment is overruled.

Two rulings by the trial judge relative to the admissibility of telephone conversations are the bases for defendant's third assignment of error.

[6] Defendant first contends that the court erred in excluding a telephone conversation between Betty Lou Stewart, defendant's wife, and the deceased Dorothy Jean Tolar Jordan. In that conversation Mrs. Jordan told Mrs. Stewart that she wanted to speak to defendant to tell him that his son had cut himself and planned to kill himself. She then spoke to the defendant on the telephone and apparently repeated this statement to him. The testimony indicates that immediately thereafter defendant left his home saying, "I am going to see about my son." Taken in the most favorable light to the defendant, this testimony merely establishes a reason for the appearance of defendant near the home of the two women on the afternoon of the murders. His presence there was later established by other testimony, and, since the telephone conversation is in no way exculpatory, no prejudice resulted from its exclusion. See 1 Stansbury's North Carolina Evidence (Brandis rev. 1973) § 9.

Defendant's second contention centers on the admission of testimony by defendant's son regarding a short conversation between him and Rolland Lockamy. The record reveals that the conversation in question concerned insignificant matters which were, for the most part, already in evidence. It is inconceivable that this evidence could have prejudiced defendant under the circumstances. See State v. Pruitt, 286 N.C. 442, 212 S.E. 2d

92 (1975) ; *State v. Little,* 278 N.C. 484, 180 S.E. 2d 17 (1971). Defendant's third assignment has no merit and is overruled.

[7] Defendant's fourth assignment is grounded on his contention that the court erred in failing to charge on the lesser included offense of manslaughter.

Voluntary manslaughter is the unlawful killing of a human being without malice and without premeditation and deliberation. *State v. Benge,* 272 N.C. 261, 158 S.E. 2d 70 (1967). Involuntary manslaughter is the unlawful killing of a human being without malice, without premeditation and deliberation, and without intention to kill or inflict serious bodily injury. *State v. Rummage,* 280 N.C. 51, 185 S.E. 2d 221 (1971) ; *State v. Honeycutt,* 250 N.C. 229, 108 S.E. 2d 485 (1959) ; *State v. Satterfield,* 198 N.C. 682, 153 S.E. 155 (1930). Instructions on a lesser included offense are required only when "there is evidence from which the jury could find that such included crime of lesser degree was committed." *State v. Ward,* 286 N.C. 304, 210 S.E. 2d 407 (1974) ; *State v. Hicks,* 241 N.C. 156, 84 S.E. 2d 545 (1954). If all the evidence tends to show that the crime charged in the indictment was committed, and there is no evidence tending to show commission of a crime of less degree, the court correctly refuses to charge on the unsupported lesser degree. *State v. Duboise,* 279 N.C. 73, 181 S.E. 2d 393 (1971), and cases cited.

Here, the State's evidence tends to show that defendant entered the house of the victims, shot Dorothy Jean Tolar Jordan four times, shot Thelma Whitehead three times, doused their bodies with gasoline and set them on fire. Defendant produced no evidence tending to rebut the State's evidence with respect to the *nature* of the crime. Rather, his defense was alibi and the testimony of his witnesses tended to support the alibi theory. Upon the record before us there is no evidence to support a verdict of manslaughter and the court properly declined to charge the jury on such lesser included offense. *State v. Roseboro,* 276 N.C. 185, 171 S.E. 2d 886 (1970) ; *State v. Freeman,* 275 N.C. 662, 170 S.E. 2d 461 (1969) ; *State v. Ross,* 275 N.C. 550, 169 S.E. 2d 875 (1969). Defendant's fourth assignment is overruled.

[8] In *Woodson v. North Carolina,* 428 U.S. 280, 49 L.Ed. 2d 944, 96 S.Ct. 2978 (decided 2 July 1976), the United States Supreme Court invalidated the death penalty provisions of G.S. 14-17 (Cum. Supp. 1975), the statute under which defendant

was indicted, convicted and sentenced to death. By authority of the provisions of Section 7, Chapter 1201 of the 1973 Session Laws (1974 Session), a sentence of life imprisonment must therefore be substituted in the Dorothy Jean Tolar Jordan case (No. 75-CR-8792).

Our examination of the entire record discloses no error affecting the validity of the verdicts returned by the jury. Defendant's conviction must therefore be upheld. To the end that a sentence of life imprisonment may be substituted in lieu of the death sentence heretofore imposed in Case No. 75-CR-8792, the case is remanded to the Superior Court of Harnett County with directions (1) that the presiding judge, without requiring the presence of defendant, enter a judgment in Case No. 75-CR-8792 imposing life imprisonment for the first degree murder of which defendant has been convicted; and (2) that in accordance with said judgment the clerk of superior court issue a commitment in substitution for the commitment heretofore issued. It is further ordered that the clerk of superior court furnish to defendant and his counsel a copy of the judgment and commitment as revised in accordance with this opinion.

In Case No. 75-CR-8792—No error in the Verdict; Death Sentence Vacated.

In Case No. 75-CR-8793—No error.